# STATE OF MICHIGAN

# COURT OF APPEALS

---

SAU-TUK INDUSTRIES, INCORPORATED,

        Plaintiff-Appellant,

v

ALLEGAN COUNTY,

        Defendant-Appellee.

FOR PUBLICATION
June 28, 2016
9:05 a.m.

No. 324405
Allegan Circuit Court
LC No. 14-053044-CH

---

*In re* PETITION OF ALLEGAN COUNTY
TREASURER FOR FORECLOSURE.

---

ALLEGAN COUNTY TREASURER,

        Petitioner-Appellee,

v

SAU-TUK INDUSTRIES, INC.,

        Respondent-Appellant.

No. 325926
Allegan Circuit Court
LC No. 14-053379-CZ

---

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

These consolidated appeals present the same legal issue: the validity of liens for unpaid utility charges assessed by the City of Holland's Board of Public Works (BPW) under the city's charter and ordinances as authorized by MCL 141.121(3) and enforced in the same manner as delinquent property taxes. The liens secured payment for electric and water services to property that appellant Sau-Tuk Industries leased to Michigan Wood Pellet, LLC (MWP) and were enforced by appellee Allegan County Treasurer at its annual sale of properties to satisfy delinquent taxes. In Docket No. 324405, Sau-Tuk appeals by right the trial court's October 10, 2014 order that granted appellee Allegan County's motion for summary disposition because appellant failed to comply with the plain language of MCL 141.121(3) and the city's ordinances to exempt the property from the utility liens. Sau-Tuk also appeals by right the portion of the

-1-

trial court's February 2, 2015 judgment of foreclosure of properties for unpaid taxes that included the property at issue (Docket No. 325926). We conclude that the trial court correctly ruled that because Sau-Tuk failed to follow the plain mandate of MCL 141.121(3) and the city's ordinances to forestall the liens, Allegan County was entitled to summary disposition in Docket No. 324405 and a judgment of foreclosure in Docket No. 325926. We affirm.

## I. STATE STATUTE AND LOCAL ORDINANCES AT ISSUE

Section 21 of the Revenue Bonding Act (RBA), MCL 141.101 *et seq.*, MCL 141.121, is at issue in these cases. Under the RBA, a public corporation—such as a city or county, see MCL 141.103(a)—is "authorized to purchase, acquire, construct, improve, enlarge, extend or repair 1 or more public improvements and to own, operate and maintain the same, within or without its corporate limits, and to furnish the services, facilities, and commodities of any such public improvement to users within or without its corporate limits." MCL 141.104. A "public improvement" is defined to include sewage disposal and water supply systems, and "utility systems for supplying light, heat, or power . . . ." MCL 141.103(b). Pertinent to collecting charges for such utility services, Section 21 of the RBA provides:

> Charges for services furnished to a premises may be a lien on the premises, and those charges delinquent for 6 months or more may be certified annually to the proper tax assessing officer or agency who shall enter the lien on the next tax roll against the premises to which the services shall have been rendered, and the charges shall be collected and the lien shall be enforced in the same manner as provided for the collection of taxes assessed upon the roll and the enforcement of the lien for the taxes. The time and manner of certification and other details in respect to the collection of the charges and the enforcement of the lien shall be prescribed by the ordinance adopted by the governing body of the public corporation. However, *in a case when a tenant is responsible for the payment of the charges and the governing body is so notified in writing, the notice to include a copy of the lease of the affected premises, if there is one, then the charges shall not become a lien against the premises after the date of the notice.* In the event of filing of the notice, the public corporation shall render no further service to the premises until a cash deposit in a sum fixed in the ordinance authorizing the issuance of bonds under this act is made as security for the payment of the charges. . . . . [MCL 141.121(3); Emphasis added.]

Pursuant to the authorization in MCL 141.121(3), the city of Holland in Chapter 12 of its Charter provides for municipal ownership of utilities and for the creation of liens to secure payment for utility services, which "become effective immediately upon the distribution or supplying of such utility service or services to such premises." Holland Charter, § 12.18. Furthermore, the city of Holland, in its code of ordinances, provides for the creation and enforcement of liens by which it may recover charges for utility services, subject to the landlord exception of MCL 141.121(3). As authorized by the RBA, § 9-3 of Holland's code of ordinances provides that the city, subject to state law, "shall have as security for the collection of all charges for electric services . . . a lien upon the premises to which such electric services were supplied. Such liens shall become effective immediately upon the distribution or supplying of such electric service or services to such premises." Section 9.6 of Holland's code of ordinances

also adopts the landlord exception of MCL 141.121(3), which provided at all times pertinent to this case:

> If the owner of a premises which receives electric services provided by the City shall lease such premises to a tenant who is responsible under the lease for the payment of the charges for electric services, and such property owner notifies the Board of public works [BPW], in writing, of such fact, the notice to include a true copy of the lease of the affected premises, if there is one, then the charges for electric services provided to such premises shall not become a lien against the premises after the date such notice is received by the [BPW]. Immediately after the filing of such notice, the [BPW] shall render no further service to the premises until it receives from the tenant, or an individual or entity acting on behalf of the tenant, a cash deposit or surety bond, as established by resolution adopted by City Council, or it receives record of a previously established good credit history of not less than 12 consecutive months, as security for the payment of the electric charges. . . . [Holland Code, § 9-6.][1]

The city of Holland also provides for the creation of a lien on premises to which water services are provided. See Holland Code, § 37-30. Although a nominal part of this case, the exception to imposition of a lien for water charges provides:

> If the owner of a premises which receives water services provided by the City shall lease such premises to a tenant who is responsible under the lease for the payment of the charges for water services accruing subsequent to the filing of an affidavit by the property owner with the Board of Public Works, said affidavit to affirm the execution of such a lease containing a provision regarding the tenant's responsibility for payment of the charges for water services and to contain a notation of the expiration date of the lease, then the charges for water services provided to such premises shall not become a lien against the premises after the date such affidavit is received by the Board of Public Works. . . . [Holland Code, § 37-33; see also MCL 123.165.]

## II. FACTS AND PROCEEDINGS

Sau-Tuk owns the property at issue in these appeals and leased it to MWP for an initial lease term of from November 1, 2006 to October 31, 2011. It then renewed the lease for an additional five years from October 31, 2011. Under the terms of the lease, as stated in the trial court's opinion, MWP "assumed responsibility for the payment of all utility charges, taxes, and fees," as well as the "operation, repair, maintenance and management of the Property." Sau-Tuk acknowledges that it did not initially inform the BPW of this fact in a written notice and with a

---

[1] This section was amended on May 14, 2014 by Ordinance No. 1627. The current version of § 9-6 is substantially similar to that in effect at the time of the events in this case but provides that written notice must "include a true copy of the lease of the affected premises executed by the owner or his/her designated agent and the tenant[.]"

copy of the lease as is required by MCL 141.121(3) and city ordinance to exempt the property from the imposition of a lien for any unpaid utility charges.

Sometime in October 2006 MWP contacted the BPW about providing utility services to the property. Because MWP was a new business without an established good credit history, and because MWP was renting the property, the BPW required MWP to provide either a surety bond or a cash deposit as a condition of obtaining utility services. According to Julie Thompson, the BPW's corporate designee, the BPW does not require security by owners of property who request utility services. MWP complied with the request and obtained a surety bond in the amount of $54,000 in May 2007. The amount of the surety bond was determined by the BPW and approved by an assistant city attorney in an April 2, 2007 letter to the insurance company. Sau-Tuk argues that this letter and Thompson's testimony show that the BPW had actual knowledge of MWP's tenancy and obligation to pay for utility services provided to the property.

After MWP obtained the surety bond, the BPW began providing utility services to the subject property and billing MWP directly for those services. MWP timely paid all of the charges for water and electric service between 2007 and 2010. During this timeframe, MWP renewed its surety bond several times before the BPW released it from its surety bond requirement in a March 17, 2010 letter because MWP had established "a good payment history of twelve consecutive months . . ." Thereafter, MWP continued timely paying its utility bills. In May 2011, MWP began to fall behind on its utility payments. By the January 2012 BPW statement for utility services, MWP owed $74,324.77 of which $35,390.52 was delinquent. On March 8, 2012, Sau-Tuk, for the first time, sent the BPW a written notice, with a copy of the lease, of MWP's agreement to pay for utility charges incurred at the leased property.

On January 14, 2014, the Allegan County Treasurer served Sau-Tuk with a notice of forfeiture based upon the unpaid utility charges that MWP had incurred. The notice of forfeiture referred to the delinquent utility charges as delinquent property "taxes," setting forth a schedule of dates by which payment must be made and, if not paid, advising that the trial court would enter a judgment of foreclosure sometime between February 1, 2015 and March 31, 2015. The Allegan Treasurer ultimately filed its petition for foreclosure in the trial court on May 14, 2014. The petition resulted in the judgment of foreclosure appealed in Docket No. 325926.[2]

Sau-Tuk responded to the foreclosure notice by filing a complaint in the trial court on March 10, 2014, seeking a declaration that the liens were improper and invalid. In support of its claim for declaratory relief, Sau-Tuk relied on § 9-6 of the Holland Code, which, as set forth above, prevents a lien from arising against the premises for unpaid electric charges if the owner

---

[2] Holland's ordinances and MCL 141.121(3) provide that charges for utility services become a lien on the property provided the services which "shall be enforced in the same manner as provided for the collection of taxes assessed upon the roll and the enforcement of the lien for the taxes." Nevertheless, the charges and liens are not "taxes" but are, instead, a means for collecting a contractual liability for services provided to the property. See *Brown Bark I, LP v Traverse City Light & Power Dep't*, 736 F Supp 2d 1099, 1106-1114 (WD Mich, 2010) (holding that such liens are not taxes that implicate the Tax Injunction Act of 1937, 28 USC 1341).

of the premises provides a written notice, with a copy of the lease, showing that a tenant is responsible under the lease for the payment of those charges. Although Sau-Tuk did not send a written notice to the BPW that MWP was responsible for paying utility charges under a lease along with a copy of the lease until the utility charges in this case were incurred, Sau-Tuk alleged that the requirements of the notice provision of § 9-6 (and of § 37-33) were satisfied because the BPW had *actual* notice that MWP was renting the property and responsible for paying utility charges. Sau-Tuk asserted that because "the goal and intended purpose" of the city ordinance had been satisfied, the city and county were barred from placing a lien on the property for unpaid utility charges that MWP incurred during its tenancy.

On August 4, 2014, the county moved the trial court for summary disposition in its favor pursuant to MCR 2.116(C)(10). In pertinent part, the county argued that it was entitled to judgment as a matter of law because both § 9-6 of the city ordinance and MCL 141.121(3), from which the city ordinance derived, required a property owner to file a written notice advising that a tenant of the property is responsible for utility charges. The county argued that under the terms of the city ordinance and state statute, a written notice must be given before any utility charges are incurred to avoid a lien from arising against the property. Since it was undisputed that Sau-Tuk did not file its written notice until after MWP incurred the utility charges, the notice was "too late . . . to prevent a lien from attaching to the property for the unpaid utilities."

On August 5, 2014, Sau-Tuk filed its own motion for summary disposition pursuant to MCR 2.116(C)(9) (opposing party has failed to state a valid defense) and (C)(10). Sau-Tuk's (C)(9) motion was premised upon its argument that the county's sole defense—that Sau-Tuk failed to comply with MCL 141.121(3) by providing written notice with a copy of the lease to the BPW that a tenant was responsible for payment of the charges—was "untenable" because the notice provision was satisfied because the BPW had actual notice of MWP's tenancy and responsibility for paying for utility charges. The trial court ultimately denied Sau-Tuk relief under MCR 2.116(C)(9) because such a motion could be decided on the pleadings only and the county had unambiguously asserted in its answer "that actual notice does not constitute compliance with the notice provision of MCL 141.121(3)." While Sau-Tuk states in its brief on appeal the legal standard for motions under MCR 2.116(C)(9), it does not specifically challenge the trial court's ruling. Consequently, this part of the Sau-Tuk's appeal is abandoned. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). Moreover, the essence of the parties' claims was decided adversely to Sau-Tuk by the trial court's ruling under MCR 2.116(C)(10).

The trial court held a hearing on the parties' motions on October 6, 2014. At the outset, Sau-Tuk acknowledged that it did not initially provide the BPW with an affidavit and a copy of the lease.[3] Nonetheless, Sau-Tuk argued that it had substantially complied with the notice

---

[3] A property owner is only required to file an affidavit to avoid a lien for water service charges. See MCL 123.165; Holland Code, § 37-33. To avoid a lien for electric service charges, a property owner must provide "in writing" a notice of a tenant's responsibility for payment and "a true copy of the lease of the affected premises, if there is one . . . ." Holland Code, § 9-6. The current version of § 9-6 provides that the written notice must "include a true copy of the lease of

requirement and also that the trial court should "apply the doctrine of estoppel or otherwise declare that the purpose and the intent of the statute has been satisfied" because strict compliance with the notice requirement would not have led to a different result. Sau-Tuk argued that the BPW required MWP to obtain a surety bond, thus demonstrating that it was on actual notice that MWP was a tenant responsible for paying the utility charges. The county responded that the purpose of the ordinance is "only fulfilled if the owner actually seeks to . . . protect their rights" by filing written notice of the tenant's obligation to pay utility charges. Because Sau-Tuk "never acted to protect itself," it failed to comply with the notice requirement.

On October 14, 2014, the trial court issued its written opinion and order denying Sau-Tuk's motion for summary disposition and granting the county's motion. With respect to Sau-Tuk's motion under MCR 2.116(C)(10), the trial court first concluded that Sau-Tuk had not substantially complied with the notice requirements of MCL 141.121(3) and Holland's ordinances. The trial court reasoned that to avoid a lien encumbering property furnished utility service, a property owner must, with respect to electric services, provide the BPW a written notice, § 9-6, and with respect to water service, provide the BPW an affidavit, § 37-33, and both must be accompanied by a copy of the lease. The court further ruled that the clear and unambiguous terms of § 9-6 and § 37-33 required that the property owner, not the tenant or other entity, give written notice of the lease and tenant's responsibilities. Thus, the court concluded Sau-Tuk "did nothing to comply with the statute, and left the protection of its property rights to its tenant . . . ." The court also reasoned that Sau-Tuk, in essence, acknowledged that it knew that it had not previously complied with the statutory notice requirement by doing so "after the utility charges in question had been incurred . . ."

The trial court next concluded that Sau-Tuk's estoppel argument was unavailing. Sau-Tuk argued that by requiring MWP to post a surety bond and billing MWP for the utility services provided, the BPW induced Sau-Tuk to believe that compliance with MCL 141.121(3) and § 9-6 was not necessary. The trial court acknowledged that in certain circumstances equitable estoppel may apply to a municipality. And, although the BPW required MWP to obtain a surety bond, that act was not sufficient to estop the BPW from requiring written notice of Sau-Tuk because it would not be possible to conclude that Sau-Tuk justifiably relied and acted on the belief that it need not comply with the plain terms of the statute and city ordinance to protect itself from a lien against the property. The court ruled that Sau-Tuk was presumed to know the requirements of a law and could not attribute fault to BPW for its own failure to act.

The trial court also noted that Sau-Tuk failed to contact the BPW directly regarding whether MWP's actions satisfied the written notice requirement of MCL 141.121(3) and § 9-6. Therefore, the court ruled that equitable estoppel did not apply.

The trial court next ruled in favor of the county on its motion for summary disposition. It applied the principle of statutory construction that because MCL 141.121(3) was clear and unambiguous, it must be enforced as written. That is, it requires a property owner-landlord to provide written notice of a tenant's obligation to pay utility charges, along with a copy of the

---

the affected premises executed by the owner or his/her designated agent and the tenant[.]" (Ord. No.1627, 5/14/2014).

lease agreement. The provisions of § 9-6 of Holland's ordinance are substantially similar. The trial court opined that "if the notice provisions of MCL 141.121 and the Holland ordinances could be satisfied by nothing more than a tenant giving written notice to the BPW, without a copy of his or her lease, those notice provisions would be rendered nugatory." Because Sau-Tuk failed to comply with the plain language of MCL 141.121(3) and the Holland ordinances by providing a written notice and a copy of the lease to the BPW before the utility services were provided to the property, we agree a valid lien to secure payment of charges for those services attached to the property. The trial court therefore granted the county summary disposition.

Notwithstanding the trial court's order establishing the validity of the utility liens, Sau-Tuk filed an objection to the pending foreclosure petition. In support of its objections, Sau-Tuk relied on the same arguments previously presented in the declaratory action. At a hearing on the objections, the trial court determined that the foreclosure petition would proceed because Sau-Tuk was barred by the doctrine of res judicata from raising arguments already decided in the previous action. Consequently, the trial court entered its judgment of foreclosure that included Sau-Tuk's property. Sau-Tuk subsequently appealed the judgment of foreclosure in Docket No. 325926, and this Court consolidated the appeal with the appeal in Docket No. 324405.

III. ANALYSIS

A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In this case, the parties filed competing motions for summary disposition pursuant to MCR 2.116(C)(10), which may be granted if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." In deciding a motion under MCR 2.116(C)(10), the trial court must consider affidavits, pleadings, depositions, admissions, and any other evidence submitted by the parties in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. The trial court properly grants the motion when the proffered evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003); MCR 2.116(C)(10).

The issue presented in these appeals concerns the interpretation of both a state statute and municipal ordinance provisions. Statutory interpretation presents a question of law, which this Court reviews de novo. *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014). Municipal ordinances are interpreted and reviewed in the same manner as statutes. *Bonner v Brighton*, 495 Mich 209, 221-222; 848 NW2d 380 (2014). Thus, our review is de novo, and "the rules governing statutory interpretation apply with equal force to a municipal ordinance[.]" *Id*. at 222. As we stated in *Mayor of Cadillac*, 306 Mich App at 516:

> When interpreting a statute, our primary goal is to give effect to the intent of the Legislature. If the language of a statute is unambiguous, we presume the Legislature intended the meaning expressed in the statute. A statutory provision is ambiguous only if it conflicts irreconcilably with another provision or it is equally susceptible to more than one meaning. . . . When construing a statute, we

-7-

must assign every word or phrase its plain and ordinary meaning unless the Legislature has provided specific definitions or has used technical terms that have acquired a peculiar and appropriate meaning in the law. [Internal quotation marks and citations omitted.]

Similarly, "the goal of construction and interpretation of an ordinance is to discern and give effect to the intent of the legislative body." *Bonner*, 495 Mich at 222. The most reliable evidence of that intent is the language of the ordinance itself, which must be given its plain and ordinary meanings. *Id*. When the words used in a statute or an ordinance are clear and unambiguous, they express the intent of the legislative body and must be enforced as written. *Gilliam v Hi-Temp Products Inc*, 260 Mich App 98, 109; 677 NW2d 856 (2003); *Brandon Charter Twp v Tippett*, 241 Mich App 417, 442; 616 NW2d 243 (2000).

## B. DISCUSSION

We conclude that even if Sau-Tuk could prove that Holland's BPW had actual knowledge of MWP's tenancy and responsibility under its lease to pay for utility charges, because Sau-Tuk failed to follow the clear and unambiguous direction of MCL 141.121(3) and the city's ordinances to prevent the utility liens at issue from arising, the trial court properly enforced the statute and ordinances as written by granting Allegan County summary disposition in Docket No. 324405 and granting a judgment of foreclosure in Docket No. 325926.

The legal issue presented in these appeals is not exactly one of first impression. The trial court, in addition to enforcing the plain language of the statute and Holland's ordinances, also relied on *Saginaw Landlords Ass'n v Saginaw*, unpublished opinion per curiam of the Court of Appeals, issued November 2, 2001 (Docket No. 222256). Although unpublished opinions of this Court are not binding precedent, they may be considered instructive or persuasive. *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). In *Saginaw Landlords Ass'n*, unpub op at 1-2, this Court addressed whether Saginaw's liens for unpaid water charges were valid and enforceable against the plaintiffs' properties under the terms of MCL 141.121(3) and Saginaw's ordinance, § 4-108, comparable to Holland's § 9.3 and § 9.6. Section 4-108 provided that "charges for water and services" are "made a lien on all premises served thereby, unless notice is given that a tenant is responsible" as provided by MCL 141.121(3). The plaintiffs argued that "their tenants' completed water applications provided defendant with sufficient notice of the tenants' responsibility for payment to preclude defendant from enforcing liens under [MCL 141.121(3)] and the city ordinance." *Saginaw Landlords Ass'n*, unpub op at 3-4. This Court rejected the plaintiffs' argument, holding that the tenants' applications did not satisfy the notice requirements of the statute because Saginaw "was not provided any additional written notice specifically indicating that the tenant agreed to be responsible for payment of the water bills under leases executed with plaintiffs, a requirement even if the leases themselves were oral." *Id*. at 4. Thus, the Court implicitly concluded that a municipal corporation's actual knowledge of a tenant's obligation to pay utility charges was insufficient to save the property owner from a lien to secure payment if the tenant fails to pay arising by operation of law against the property served. In so doing, this Court concluded that the notice provision of MCL 141.121(3), as well as that of the city's ordinance, was clear and unambiguous, and that the water applications submitted by the tenants "did not satisfy" the statute's plain terms. *Saginaw Landlords Ass'n*, unpub op at 2, 4. This Court concluded that "[i]f the notice required by

[Saginaw's] ordinance was satisfied simply by a tenant's completion of the water application, it would render meaningless the statutory language requiring written documentation of the lease agreement fixing responsibility for water payment on a tenant." *Id*. at 4. We find *Saginaw Landlords* persuasive because it applied the plain text of the statute and pertinent ordinances.

As the trial court correctly observed, and this Court determined in *Saginaw Landlords Ass'n*, MCL 141.121(3) is plain and unambiguous. The statute plainly provides that when a public corporation, such as Holland, provides utility services, the "[c]harges for [the] services furnished to a premises may be a lien on the premises . . . ." Holland in its Charter and in its Code of Ordinances has acted on this statutory authority by creating liens on premises which arise and attach to the premises furnished utility services at the time the services are provided.[4]

At oral argument, we requested that the parties further brief the issue of when the utility liens at issue "attached" to Sau-Tuk's property. The question relates to whether the utility liens "attached" before or after Sau-Tuk's March 8, 2012 written notice with a copy of the lease to the BPW—as required by MCL 141.121(3) and § 9.6--of MWP's agreement to pay for utility charges incurred at the leased property. Sau-Tuk argues that the utility charges do not become a lien and attach until they have been certified and entered on the tax roll against the premises. It relies on the provision in MCL 141.121(3) that states that the utility "charges delinquent for 6 months or more may be certified annually to the proper tax assessing officer or agency who shall enter the lien on the next tax roll against the premises to which the services shall have been rendered . . . ." We disagree with this analysis, which, although not totally without merit, conflates delinquent *charges* with the *lien* intended to secure payment of the charges.

First, nowhere in the statue or Holland's ordinances is the word "attach" used. Rather, MCL 141.121(3) authorizes a municipal corporation to create utility liens, see *Saginaw Landlords Ass'n*, unpub op at 2, and the statute also directs that the municipality prescribe by ordinance "[t]he time and manner of certification and other details in respect to the collection of the charges and the enforcement of the lien . . . ." So, the statute addresses: (1) the creation and

_____

[4] "Except as otherwise provided, or limited by state law, the city shall have as security for the collection of all charges, a lien upon the premises to which such utility services were supplied. Such lien shall become effective immediately upon the distribution or supplying of such utility service or services to such premises. . . ." Holland Charter, § 12.18.

"Except as otherwise provided or limited by state law, the City shall have as security for the collection of all charges for electric services as authorized by the Revenue Bond Act of 1933, as amended, a lien upon the premises to which such electric services were supplied. Such liens shall become effective immediately upon the distribution or supplying of such electric service or services to such premises. . . ." Holland Code, § 9-3.

"Except as otherwise provided or limited by state law, the City shall have as security for the collection of all charges for water services as authorized by the Collection of Water Charges Act, a lien upon the premises to which such water services were supplied. Such lien shall become effective immediately upon the distribution or supplying of such water service or services to such premises . . . ." Holland Code, § 37-30.

enforcement of a *lien*, and (2) the certification and collection of delinquent utility *charges*. Likewise, the language Sau-Tuk cites provides for the certification of delinquent *charges* and entry of the *lien* on the tax rolls. This language can only mean that the utility lien already exists when "the proper tax assessing officer or agency" certifies the delinquent utility *charges* and then enters the existing *lien* on the tax rolls. This reading is consistent with the very nature of a lien that only exists to secure payment of a debt, in this case the utility charges. See Black's Law Dictionary (10th ed), defining "lien" as "[a] legal right or interest that a creditor has in another's property, lasting usu. only until a debt or duty that it secures is satisfied." See also *Barrows v Baughma*n, 9 Mich 213, 218 (1861) ("The lien . . . is intended as a security for the *payment* of the debt, and can only be enforced as a means of compelling *payment*.").

Also, Black's Law Dictionary (10th ed), defines "attach" as "[t]o annex, bind, or fasten[,]" and "[t]o take or seize under legal authority <attach the debtor's assets>." In this case, there is no question regarding to what property the utility lien attaches. The statute plainly specifies the lien attaches to the premises furnished the utility services. MCL 141.121(3) ("Charges for services furnished to a premises may be a lien on the premises . . . ."); See *Norcross Co v Turner-Fisher Assoc*, 165 Mich App 170, 179-180; 418 NW2d 418 (1987) (discussing to which interests a construction lien "attached").

In this case, MCL 141.121(3) plainly authorizes the city of Holland to create a lien that attaches to premises furnished the utility services to secure payment of the charges (the debt) for the utility services that are furnished to the premises and directs the city by ordinance to prescribe "[t]he time and manner of certification and other details in respect to the collection of the charges and the enforcement of the lien . . . ." In exercising this authority, Holland has created liens on premises that arise and attach to the premises furnished utility services at the time those services are provided. "Such liens shall become effective immediately upon the distribution or supplying of such electric [water] service or services to such premises. . . ." Holland Code, § 9-3; § 37-30. We must enforce the clear and unambiguous provisions of the state statute and Holland's ordinances as written. *Gilliam*, 260 Mich App at 109; *Brandon Charter Twp*, 241 Mich App at 442.

As just discussed, the utility liens at issue arise by operation of law upon the furnishing of utility services to the premises. See *Brown Bark I, LP v Traverse City Light & Power Dep't*, 736 F Supp 2d 1099, 1118, 1121 (WD Mich, 2010) (holding that utility liens authorized by MCL 141.121(3) and implemented by local ordinance arise "by operation of law, as provided by statute, without any need to rely on any private contract or other written undertaking, and without the need to file a lien."); see also *Cheff v Haan*, 269 Mich 593, 598; 257 NW 894 (1934) (noting that "liens upon real estate may be created only in writing [by contract] or by operation of law"). In this case, pursuant to MCL 141.121(3) and Holland's ordinance provisions, liens on Sau-Tuk's property to pay for the utility services, here water and electricity, arose by operation of law at the time the services were furnished unless before the services were furnished, Sau-Tuk invoked the landlord exception by giving the BPW written notice of MWP's tenancy and obligation to pay for utilities (or an affidavit in the case of water service) and a copy of the written lease, if one exists. It is undisputed that Sau-Tuk failed to provide the BPW a written notice of MWP's tenancy and obligation under the lease terms to pay for utility charges, as required by MCL 141.121(3) and Holland Code, § 9.6, until after the utility services had been provided, the lien came into existence, and the charges had become delinquent. The issue then

becomes whether Sau-Tuk may invoke the landlord exception, not by complying with the plain terms of the statute and city ordinance, but by presenting evidence that the BPW had actual knowledge of MWP's tenancy and obligation to pay for utilities. Principles of statutory construction require that we reject Sau-Tuk's argument. See *Wyandotte Electric Supply Co v Electrical Technology Sys, Inc*, 499 Mich ___, ___; ___ NW2d ___ (2016), slip op at 9-10 (holding that the Court must give effect to every word, phrase, and clause of a statute requiring written notice under the public works bond act, MCL 129.201 *et seq.*, to avoid rendering any part of the statute surplusage or nugatory).

We agree with the reasoning of this Court in *Saginaw Landlords Ass'n*, unpub op at 4, that to accept Sau-Tuk's argument would render nugatory the clear and unambiguous language of MCL 141.121(3) and Holland Code, § 9.6. The statute and ordinance required Sau-Tuk to give written notice to the BPW of its lease with MWP and of its tenant's obligation under the lease to pay the charges for utility services furnished the property to preclude the utility liens from arising. A clear and unambiguous statute needs no further construction, and its plain terms must be enforced as written. *Gilliam*, 260 Mich App at 109. "Stated otherwise, when a statute plainly and unambiguously expresses the legislative intent, the role of the court is limited to applying the terms of the statute to the circumstances in a particular case." *GMAC LLC v Dep't of Treas*, 286 Mich App 365, 372; 781 NW2d 310 (2009). Furthermore, we may not pick and choose what parts of a statute to enforce; we must give effect to every word of a statute if at all possible so as not to render any part of the statute surplusage or nugatory. *Id*. at 373; *Wyandotte Electric Supply Co*, 499 Mich at ___, slip op at 9-10. Similarly, we must also enforce as written the clear and unambiguous terms of Holland's ordinances. *Brandon Charter Twp*, 241 Mich App at 442. Because Sau-Tuk failed to comply with the plain language of MCL 141.121(3) and the city's ordinances to prevent the utility liens from arising, the trial court properly rejected Sau-Tuk's argument that the BPW's knowledge from other sources could prevent enforcement of liens in due course "in the same manner as provided for the collection of taxes assessed upon the roll and the enforcement of the lien for the taxes." MCL 141.121(3).

Like the trial court, we also reject Sau-Tuk's argument that the county and the city should be estopped from asserting noncompliance with MCL 141.121(3) and § 9-6 of Holland's ordinances because the BPW induced Sau-Tuk to believe strict compliance was not necessary when the BPW required MWP to post a surety bond and billed MWP directly for the utility services provided. Specifically, Sau-Tuk contends that the filing of the written notice required by these provisions is a prerequisite to the BPW's right to insist upon a surety bond before providing utility services. The part of the statute and the ordinance on which Sau-Tuk relies provides:

> In the event of filing of the notice, the public corporation shall render no further service to the premises until a cash deposit in a sum fixed in the ordinance authorizing the issuance of bonds under this act is made as security for the payment of the charges. [MCL 141.121(3).]

> Immediately after the filing of such notice, the [BPW] shall render no further service to the premises until it receives from the tenant, or an individual or entity acting on behalf of the tenant, a cash deposit or surety bond, as established by resolution adopted by City Council, or it receives record of a previously

established good credit history of not less than 12 consecutive months, as security for the payment of the electric charges. . . . [Holland Code, § 9-6.]

Clearly, both provisions require that once a municipality has been provided a written notice of a tenant's obligation to pay utility charges, the municipality must refrain from providing further utility services to the property until it obtains adequate security to ensure payment.

Nevertheless, the premise of Sau-Tuk's argument—that the written notice required by MCL 141.121(3) and § 9-6 is a prerequisite to the BPW's right to require a surety bond—is false. While the statute and ordinance specify a course of action that the city and its BPW must follow if a written notice is filed, it does not specify that the city or its BPW cannot require of a new non-residential utility customer—one without a credit history—a cash deposit or surety bond to secure payment of utility charges. While principles of statutory construction require that we give effect to every word of a statute if at all possible so as not to render any part of the statute surplusage or nugatory, *GMAC LLC*, 286 Mich App at 373, the pertinent principle regarding Sau-Tuk's argument is that "nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999). In other words, we "may not speculate regarding legislative intent beyond the words expressed in a statute." *Id*. There is simply no provision in either MCL 141.121(3) or Holland's ordinance that prohibits the BPW from requiring security of a non-residential utility customer who does not have an established credit history, and we may not speculate and infer one from the language Sau-Tuk cites.

Moreover, the trial court correctly ruled that Sau-Tuk cannot establish the elements of equitable estoppel. "Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Van v Zahorik*, 460 Mich 320, 335; 597 NW2d 15 (1999). In *Parker v West Bloomfield Twp*, 60 Mich App 583, 592; 231 NW2d 424 (1975), this Court ruled that "[a] municipality may be subject to the doctrine of estoppel in certain situations." A plaintiff seeking to apply the doctrine of estoppel to a municipality "must show a good faith reliance upon the municipality's conduct, lack of actual knowledge or lack of the means of obtaining actual knowledge of the facts in question, and . . . a change in position to the extent that plaintiff would incur a substantial loss were the local government allowed to disaffirm its previous position." *Id*. (quotation marks and citation omitted).

In this case, Sau-Tuk's claim of estoppel fails because it did not produce evidence that it was unaware of the requirements in MCL 141.121(3) and § 9-6 of the Holland's Code of ordinances. "[E]veryone dealing with a municipality and its agents is charged with knowledge of the . . . provisions of lawfully adopted ordinances." *Hughes v Almena Twp*, 284 Mich App 50, 78; 771 NW2d 453 (2009). While Sau-Tuk suggests that the BPW, by its conduct of requiring MWP to obtain a surety bond, induced Sau-Tuk into believing that the notice provision had been met. As the trial court observed, by filing the notice, Sau-Tuk implicitly acknowledged that it was previously not in compliance with the notice requirement. At best, it is unclear from the record whether its initial failure to file the notice was a product of its own negligence or lack of knowledge or whether it stemmed from any representations or conduct by BPW. In either scenario, because Sau-Tuk failed to produce evidence demonstrating its ignorance of the

requirements or of its reliance on the BPW's actions, we find that Sau-Tuk has proven the elements required to invoke equitable estoppel.

We affirm. As the prevailing party, appellee may tax costs pursuant to MCR 7.219.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Christopher M. Murray