*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFREY PIGEON,

    Plaintiff-Appellant,

v

ASHKAY ISLAND, LLC,

    Defendant-Appellee.

UNPUBLISHED
November 14, 2024
10:34 AM

Nos. 366537; 368718
Washtenaw Circuit Court
LC No. 22-001166-NZ

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

These consolidated[1] appeals arise out of alleged zoning violations claimed to constitute both a private nuisance per se and a private nuisance in fact. In Docket No. 366537, plaintiff, Jeffrey Pigeon, appeals by right the trial court's order denying partial summary disposition in his favor and granting summary disposition in favor of defendant, Ashkay Island, LLC (Ashkay). In Docket No. 368718, Pigeon appeals by right the trial court's order awarding Ashkay attorney fees and costs. Regarding Docket No. 366537, we reverse the trial court's order granting summary disposition in favor of Ashkay and remand for further proceedings. Regarding Docket No. 368718, we vacate the trial court's order awarding Ashkay attorney fees and costs.

## I. BACKGROUND

This case concerns Ashkay's use of Ashkay Island (sometimes referred to as the island) located within Iron Mill Pond (sometimes referred to as the lake) in Manchester Township, Michigan. Ashkay owns the island and another parcel of real property abutting Iron Mill Pond. Pigeon owns multiple parcels of real property abutting Iron Mill Pond, including his primary residence. Ashkay Island is located roughly 255 feet from the closest part of the lakeshore and roughly 560 feet from the parcel containing Pigeon's primary residence.

---

[1] See *Pigeon v Ashkay Island, LLC*, unpublished order of the Court of Appeals, entered November 28, 2023 (Docket Nos. 366537 and 368718).

The parties were involved in a prior lawsuit, Washtenaw Circuit Court Case No. 18-000070-CZ (sometimes referred to as the 2018 case), which was the subject of two prior appeals in this Court. See *Pigeon v Ashkay Island, LLC*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2021 (Docket No. 351235) (*Pigeon I*). See also *Pigeon v Ashkay Island, LLC*, unpublished per curiam opinion of the Court of Appeals, issued September 15, 2022 (Docket No. 357761) (*Pigeon II*).

In *Pigeon I*, this Court explained that Andrew Bobo (Andrew) and Nicole Bobo (Nicole) (collectively referred to as the Bobos) own Ashkay. It described their conduct leading up to the 2018 case as follows:

> At some point, the Bobos purchased a 70-acre parcel in Manchester Township. Much of the parcel is covered by Iron Mill Pond, an artificial, private lake which contains an eight-acre island (Ashkay Island). In 2014, the Bobos received a permit to build a "seasonal use cabin" on Ashkay Island. They then advertised the cabin, which the parties refer to as a house, for short-term rentals. In 2016, the Bobos conveyed the property to [Ashkay] via quit claim deed. [*Pigeon I*, unpub op at 1.]

In the 2018 case, Pigeon and other individuals who owned property bordering Iron Mill Pond (collectively referred to as the 2018 plaintiffs) sued Ashkay for using the island as a short-term rental resort allegedly in violation of the Manchester Township Zoning Ordinances (MTZO). They claimed that Ashkay's use of the island constituted both a nuisance per se and a private nuisance. *Id*. The trial court granted partial summary disposition in favor of Ashkay and dismissed the 2018 plaintiffs' nuisance-per-se claim. *Id*. at 2. It reasoned that short-term rentals did not violate the MTZO. *Id*. The 2018 plaintiffs appealed by leave granted,[2] and this Court reversed and remanded for further proceedings. *Id*. at 2, 4. We held that the 2018 plaintiffs were entitled to summary disposition of their nuisance-per-se claim. *Id*. at 3-4. There, we explained:

> A use of land or a dwelling, building, or structure in violation of a zoning ordinance is a nuisance per se. MCL 125.3407. A private citizen may bring an action to abate a nuisance "arising from the violation of zoning ordinances or otherwise[] when the individuals can show damages of a special character distinct and different from the injury suffered by the public generally." *Towne v Harr*, 185 Mich App 230, 232; 460 NW2d 596 (1990). [*Pigeon I*, unpub op at 3 (alteration in original).]

This Court recognized that the island was located within a rural agricultural zoning district and stated that Ashkay was not permitted to operate a "tourist home" on the island. *Id*. at 3. It concluded that, because Ashkay violated the MTZO, the 2018 plaintiffs were entitled to summary disposition of their nuisance-per-se claim. *Id*.

---

[2] See *Pigeon v Ashkay Island, LLC*, unpublished order of the Court of Appeals, entered March 10, 2020 (Docket No. 351235).

The appeal in *Pigeon II* concerned the extent of the 2018 plaintiffs' riparian (or littoral) rights,[3] if any. *Pigeon II*, unpub op at 1. Ashkay filed a counterclaim against the 2018 plaintiffs seeking "a decree" that it owned certain land surrounding Iron Mill Pond free and clear of any right, title, claim, or interest of the 2018 plaintiffs. *Id*. The parties filed competing summary disposition motions, and the trial court granted summary disposition in favor of the 2018 plaintiffs. *Id*. Ashkay appealed by right, and this Court affirmed. *Id*. This Court explained that because the 2018 plaintiffs established that their properties ran to the water's edge, and because land bound by natural watercourse is riparian, "the trial court did not clearly err by finding that plaintiffs had riparian rights." *Id*. at 3.

In August 2022, Pigeon filed a complaint commencing the present action against Ashkay. He alleged that Ashkay erected two structures on the island consisting of a two-story home and a "treehouse" described as a large structure with a deck. He asserted that the two-story home was equipped with "propane storage tanks and 24 lead-acid batteries used to store energy from a solar power array." And he alleged that in short-term rental advertisements, Ashkay indicated that 12 people could stay on the island. In Count 1, Pigeon alleged that Ashkay's use of the island violated the MTZO and constituted a nuisance per se under MCL 125.3407. And in Count 2, Pigeon alleged that Ashkay's use and development of the property constituted a private nuisance. Pigeon sought an order enjoining and abating Ashkay's MTZO violations, including requiring the structures to be torn down.

In April 2023, the parties filed competing summary disposition motions. Ashkay sought summary disposition on the grounds that Pigeon lacked standing and that res judicata barred his claims. Pigeon sought summary disposition on his private-nuisance-per-se claim on the ground that it was undisputed that Ashkay violated ordinance provisions. Yet Pigeon did not seek summary disposition of his private-nuisance-in-fact claim.

The trial court granted Ashkay's summary disposition motion and denied Pigeon's partial summary disposition motion. It stated that Pigeon did not suffer any specific harm or injury distinct from that suffered by the general public. Pigeon did not articulate any "actual harms" he suffered but only "fears, concerns, [and] worries" regarding "something that might happen and that hasn't happened." The trial court stated that it viewed the res judicata issue as "very close" and that Pigeon likely could have raised his instant claims in the 2018 case. But the trial court stated that it was not resolving the case on the basis of res judicata but rather on the ground that Pigeon had failed to identify any damage he had suffered distinct from that suffered by the general public.

Ashkay then moved for attorney fees and costs under MCL 600.2591. It argued that Pigeon's action was frivolous. The trial court granted Ashkay's motion. It concluded that Pigeon's

---

[3] "Strictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral." *Dyball v Lennox*, 260 Mich App 698, 705 n 2; 680 NW2d 522 (2004) (quotation marks and citations omitted). We previously (in *Pigeon I*) and presently (in this case) will use the term "riparian," which is often used in court proceedings to describe both land that abuts a river and land that abuts a lake. See *id*.

primary purpose was to harass, embarrass, or injure Ashkay. It further concluded that Pigeon lacked a reasonable basis to believe the facts underlying his legal position were true, and his legal position was devoid of arguable legal merit.

These appeals followed.

## II. LAW AND ANALYSIS

In Docket No. 366537, Pigeon challenges the trial court's summary disposition rulings. As we will explain, we agree with Pigeon that the trial court erred by granting summary disposition in favor of Ashkay on the issue of standing. However, because the res judicata issue remains unresolved and has not been raised on appeal, we reject as premature Pigeon's contention that summary disposition should be granted to him on his nuisance-per-se claim.[4]

We review de novo a trial court's summary disposition ruling. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Pigeon moved for partial summary disposition under MCR 2.116(C)(10), while Ashkay's motion relied on MCR 2.116(C)(8) and (10) with respect to the present issues.[5] Although the trial court did not specify the subrule under which it granted summary disposition to Ashkay, review is proper under MCR 2.116(C)(10) because resolution of the issues involves consideration of evidence outside the pleadings. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil*, 504 Mich at 160 (quotation marks, emphasis, and citations omitted).]

"Whether a party has standing is a question of law that is reviewed de novo." *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). This Court also reviews de novo as a question of law the interpretation of statutes and ordinances. *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 136; 892 NW2d 33 (2016). "When the words used in a statute or an ordinance are clear and unambiguous, they express the intent of the legislative body and must be enforced as written." *Id*. at 137.

---

[4] Ashkay argued below that res judicata bars both of Pigeon's claims. As noted, Pigeon requested summary disposition only on his nuisance-per-se claim. That is why it is premature to conclude that summary disposition should be granted to Pigeon *on his nuisance per-se-claim*, i.e., that is the only claim for which Pigeon has requested summary disposition.

[5] Ashkay also relied on MCR 2.116(C)(7), but that subrule pertained to the res judicata issue, which the trial court did not definitively resolve and which has not been raised as an issue on appeal.

The term "standing" generally refers to "invok[ing] the power of a trial court to adjudicate a claimed injury." *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 583; 983 NW2d 798 (2022) (quotation marks and citation omitted). "[A] litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).

> Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Id.*]

Here, the question of standing relates to the damages or harm associated with Pigeon's two related claims: (1) private nuisance per se, and (2) private nuisance in fact. "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992). See also *Capitol Props Group, LLC v 1247 Ctr St, LLC*, 283 Mich App 422, 427-429 (discussing the difference between a public nuisance and a private nuisance). A private nuisance has three elements:

> (1) [the] defendant[] interfered with the use or enjoyment of [the] plaintiff's property rights and privileges; (2) [the defendant's] invasion of the property interests caused [the] plaintiff significant harm; and (3) the invasion was intentional and unreasonable or was otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [*Cleveland v Hath*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363321); slip op at 7.]

A nuisance in fact is a nuisance "by reason of circumstances and surroundings . . . ." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 269 n 5; 761 NW2d 761 (2008). A nuisance in fact has a natural tendency "to create danger and inflict injury on person or property." *Id.* (quotation marks and citation omitted). On the other hand, a nuisance per se "is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings." *Id.* at 269 n 4 (quotation marks and citation omitted).

This Court has addressed standing in the context of a nuisance-per-se claim. See, e.g., *Sakorafos v Lyon Charter Twp*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362192); slip op at 5-8. "Under § 407 of the Michigan Zoning Enabling Act (MZEA), MCL 125.3407, the use of land or a building in violation of a zoning ordinance is a nuisance per se." *Id.* at 5. "MCL 125.3407 requires the legislative body to designate an official to enforce the ordinance and requires that official to enforce the zoning ordinance." *Id.* In particular, the statute provides:

> Except as otherwise provided by law, a use of land or a dwelling, building, or structure, including a tent or recreational vehicle, used, erected, altered, razed, or converted in violation of a zoning ordinance or regulation adopted under this act is a nuisance per se. The court shall order the nuisance abated, and the owner or agent in charge of the dwelling, building, structure, tent, recreational vehicle, or land is liable for maintaining a nuisance per se. The legislative body shall in the zoning

ordinance enacted under this act designate the proper official or officials who shall administer and enforce the zoning ordinance and do 1 of the following for each violation of the zoning ordinance:

(a) Impose a penalty for the violation.

(b) Designate the violation as a municipal civil infraction and impose a civil fine for the violation.

(c) Designate the violation as a blight violation and impose a civil fine or other sanction authorized by law. This subdivision applies only to a city that establishes an administrative hearings bureau pursuant to section 4q of the home rule city act, 1909 PA 279, MCL 117.4q. [MCL 125.3407.]

"In certain circumstances, a private party may pursue a nuisance claim against a property owner for violation of a zoning ordinance." *Sakorafos*, ___ Mich App at ___; slip op at 6. "A violation of a zoning ordinance constitutes a public nuisance that, by itself, 'gives no right of action to an individual and must be abated by the appropriate public officer.' " *Ansell v Delta Co Planning Comm*, 332 Mich App 451, 461; 957 NW2d 47 (2020), quoting *Towne*, 185 Mich App at 232. "However, a private individual who can 'show damages of a special character distinct and different from the injury suffered by the public generally' may bring an action to abate a public nuisance arising from the violation of a zoning ordinance." *Ansell*, 332 Mich App at 461, quoting *Towne*, 185 Mich App at 232. "To successfully bring an action for nuisance, the plaintiff must demonstrate standing, which may be proven by showing that the 'defendant's activities directly affected the plaintiff's recreational, aesthetic, or economic interests.' " *Sakorafos*, ___ Mich App at ___; slip op at 6 (brackets omitted), quoting *Kallman v Sunseekers Prop Owners Ass'n, LLC*, 480 Mich 1099; 745 NW2d 122 (2008).

"Under the test for standing, an adjoining landowner is likely to be determined to be affected by the nuisance created by a zoning violation in a manner distinct from the general public." *Sakorafos*, ___ Mich App at ___; slip op at 7. "[A] plaintiff's injury need not be unique in the community to confer standing to abate a nuisance per se." *Id*. The fact that "certain other residents" may experience the same harm would not prevent a plaintiff from having standing. *Id*.

Pigeon argues that MTZO § 18.09 provides a legal cause of action and thus confers standing on him under the principles set forth in *Lansing Sch*. We agree. MTZO § 18.09 provides:

Any building or structure including tents, travel trailers, and mobile homes, which are erected, constructed, reconstructed, altered, converted, maintained or used, or any use of land or premise which is begun, maintained, or changed in violation of any provision of this Ordinance, are hereby declared to be a nuisance per se. Any person, firm, or corporation or the agent in charge of such building or land who violates, disobeys, omits, neglects or refuses to comply with, or resists the enforcement of any provision of this Ordinance or any amendment thereof, shall be fined upon conviction not more than five hundred (500) dollars, together with the costs of prosecution, or shall be punished by imprisonment in the county jail for not more than ninety (90) days for each offense, or may be both fined and imprisoned

as provided herein. Each and every day during which any illegal construction, reconstruction, alteration, maintenance or use continues shall be deemed a separate offense. The Township Board, the Township Zoning Administrator, the Township Building Inspector, the Board of Appeals, the Attorney of the Township, or *any owner or owners of real estate within the district in which such building, structure or land is situated may institute injunction, mandamus, abatement or any other appropriate action or actions, proceeding or proceedings to prevent, enjoin, abate, or remove any said unlawful construction, maintenance or use*. The rights and remedies provided herein are cumulative and in addition to all other remedies provided by law. [Emphasis added.]

See also Manchester Township Ordinance No. 53(K) (providing, in relevant part, that "[a]ny access which is used in violation of the terms of this Ordinance shall be and the same is hereby declared to be a nuisance per se, and such use may be abated, restrained, enjoined, and prohibited, upon the commencement of an appropriate action in the Circuit Court."). Pigeon owns property within the zoning district in which Ashkay's structures are located. He thus has a legal cause of action and standing under MTZO § 18.09 to bring an action to abate the alleged nuisance. See generally *Lansing Sch*, 487 Mich at 372.

Ashkay argues that MTZO § 18.09 violates MCL 125.3407. It suggests that the statute does not allow a township to enact an ordinance granting private individuals the right to enforce zoning ordinances. We discern no conflict between MTZO § 18.09 and MCL 125.3407. Although MCL 125.3407 requires a local legislative body to designate public officials to administer and enforce the zoning ordinance, this does not preclude granting a remedy to certain property owners. This Court has explained that enforcement by a public official and an abatement action pursued by a private citizen are not mutually exclusive or coextensive forms of relief:

> The very fact that the Legislature provided both that a violation of the ordinance was a nuisance per se which could be abated as such by an order of a court and that the local legislative body could designate officials to enforce the ordinance and provide penalties for violations of the ordinance is indicative that the two forms of relief from violations of a zoning ordinance are not coextensive. While the designated officials are undoubtedly the only persons who can commence any action of a penal nature for zoning violations, a question we need not decide herein, there is nothing to indicate that the Legislature intended to limit a private person's right to invoke the circuit court's jurisdiction to abate a public nuisance arising out of the violation of a zoning ordinance. [*Indian Village Ass'n v Shreve*, 52 Mich App 35, 38; 216 NW2d 447 (1974).]

In support of its argument that MTZO § 18.09 conflicts with MCL 125.3407, Ashkay relies on certain language contained in *Unger v Forest Home Twp*, 65 Mich App 614, 618; 237 NW2d 582 (1975), overruled in part on other grounds by *Saugatuck Dunes*, 509 Mich 561. In *Unger*, 65 Mich App at 618, this Court stated that, to the extent a zoning ordinance gave "standing to any township property owner," it conflicted with the predecessor of MCL 125.3407. But *Unger* is distinguishable for two reasons. First, unlike the present case, it involved an administrative appeal rather than an action against a neighboring property owner for nuisance abatement. This Court in *Unger* noted that the appellant "correctly argues that an action to abate a public nuisance can be

brought by any township property owner," *Unger*, 65 Mich App at 618, citing *Indian Village*, 52 Mich App 35, but that this legal principle was inapplicable in *Unger* because the "appellant did not bring such an action, choosing instead to directly challenge the actions of the zoning board of appeals," *Unger*, 65 Mich App at 618. *Unger* is thus inapposite because it involved a different type of proceeding. Second, to the extent *Unger* addressed nuisance claims at all, it addressed public nuisances in fact, not a private nuisance per se, which is the action in this case. See *id*. See also *Ypsilanti Charter Twp*, 281 Mich App at 269-270 (discussing the difference between a nuisance in fact and a nuisance per se).

But even without relying on MTZO § 18.09, Pigeon has standing because he has presented evidence of special damages. As noted, our Supreme Court in *Lansing Sch*, 487 Mich at 372, held:

> Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large . . . .

Consistent with this aspect of *Lansing Sch*, this Court has held, in the context of a nuisance claim, that "a private individual who can 'show damages of a special character distinct and different from the injury suffered by the public generally' may bring an action to abate a public nuisance arising from the violation of a zoning ordinance." *Ansell*, 332 Mich App at 461, quoting *Towne*, 185 Mich App at 232. Standing "may be proven by showing that the 'defendant's activities directly affected the plaintiff's recreational, aesthetic, or economic interests.' " *Sakorafos*, ___ Mich App at ___; slip op at 6 (brackets omitted), quoting *Kallman*, 480 Mich at 1099. "[A]n adjoining landowner is likely to be determined to be affected by the nuisance created by a zoning violation in a manner distinct from the general public." *Sakorafos*, ___ Mich App at ___; slip op at 7.

The parties are adjoining landowners. Pigeon owns multiple parcels, including his residence, on the lakeshore and has riparian rights in the lake in which Ashkay Island is located. The island is only a few hundred feet from the shore. There is no approved driveway or road access for the structures on the island as required by provisions of the MTZO. A risk of an uncontrolled fire exists because of challenges for the Fire Department in accessing the island.

Manchester Township Fire Department Chief, William Scully, testified that, depending on wind direction, embers from a fire on the island could blow onto the mainland. The risk of fire embers being blown by the wind has been written about and is well known in the fire community. Pigeon produced an article stating that windborne embers can travel for miles and pose a fire threat to structures built near wilderness. Berlin, *Meet the Wildfire Superspreaders*, National Geographic (October 13, 2020).

Chief Scully testified that the shoreline around the lake is wooded, which creates a higher risk of a fire spreading. Cell service on the island is weak on a clear day, and there may be times when the structures on the island are vacant so that there would be no one present to alert the Fire Department of a fire. Therefore, the isolation of the island increases the risk of delay in notifying the Fire Department of any fire, which could cause the fire to spread before the Fire Department is notified. Adjacent to the home on the island were propane tanks and 24 lead-acid batteries for a solar array; the batteries would produce a toxic output when burned. Chief Scully has never seen

any other residential structure that contained that many of this type of batteries. The presence of the batteries in a concentrated space creates an additional risk.

Andrew testified that the island contains three 108-gallon propane tanks and 24 batteries for the solar array. When he needs new propane tanks, he transports the new propane tanks in a barge from the mainland shore to the island, swaps out the tanks, and then transports the old empty tanks back to the mainland.

In an affidavit, Pigeon averred, in relevant part:

The lack of access to the island also creates a toxic threat to the environment and waterway in the event of a fire cause[d] by hazards on the island that would not be able to be easily reach[ed] or extinguished by emergency services. The island is only a couple hundred feet from the nearest woods [on the mainland], and [approximately] 560 feet from my property. The wind could easily carry ash or embers and ignite the surrounding forestland based upon publically [sic] available information. I feel this is a direct threat and it . . . [has] caused me great anxiety over the years as to my personal safety, the safety of others and the well-being of my property, which includes my personal residence.

Pigeon testified at deposition about his anxiety and the effect on his peace of mind. Pigeon presented a photograph, which he says is taken from Ashkay's website, showing a campfire in a wooded area of the island containing many dead leaves on the ground near the campfire. Chief Scully testified that campfires create a risk of wildfires, especially when items like grasses and leaves that can easily catch fire have not been removed at least 10 feet from the campfire.

Pigeon presented a report from a professional engineering firm indicating that the septic system Ashkay built on the island was inadequate for the manner in which it used the property from 2016 to 2021, i.e., as an advertised rental property for a large number of guests. The Bobos arguably made misrepresentations regarding the use of the property when applying for the sewage permit. This created the potential for hydraulic overloading of the septic system, thereby posing an environmental risk to the lake. Jeffrey Leighton, a rural sanitarian for the Washtenaw County Health Department, likewise testified regarding the negative environmental effects of a sewage system failure. In 2018, the Michigan Department of Environmental Quality cited Andrew for illegally hauling human waste in portable toilet units across the lake without a permit.

Overall, the evidence supports a conclusion that Pigeon's interests are detrimentally affected in a manner distinct from that of the public generally. Ashkay's maintenance of structures lacking the required access poses an increased danger resulting from a fire or release of toxic material. Its activities could also be viewed as diminishing the rural character of the lake, which is part of a rural agricultural zoning district, thereby harming Pigeon's aesthetic interests. See MTZO § 1.03(B) (the MTZO was established for the purpose of "[p]rotecting the character and stability of the agricultural, recreational, residential, commercial and industrial areas within the [sic] Manchester Township and promoting the orderly and beneficial development of such areas."). Indeed, even if a fire on the island did not spread to the mainland through windborne embers, a fire or toxic spill may alter or diminish the natural habitat of the lake or island, of which Pigeon has a view from his properties, thereby detrimentally affecting his aesthetic interests. The harm is

-9-

not merely speculative. Pigeon's current enjoyment of his property is detrimentally affected by Ashkay's activities that create a hazard of fire and toxic contamination. See *Saugatuck Dunes*, 509 Mich at 595 (an actual *or likely* injury or burden on an asserted interest or right is required to obtain aggrieved-party status in the analogous context of a zoning appeal).

Pigeon next argues that he presented evidence of sufficient harm to maintain a cause of action for a private nuisance in fact. We agree.

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Adkins*, 440 Mich at 302.

> There are countless ways to interfere with the use and enjoyment of land including interference with the physical condition of the land itself, disturbance in the comfort or conveniences of the occupant including his peace of mind, and threat of future injury that is a present menace and interference with enjoyment. The essence of private nuisance is the protection of a property owner's or occupier's reasonable comfort in occupation of the land in question. It involves not only a defect, but threatening or impending danger to the property rights or health of persons sustaining peculiar relations to the same. [*Id*. at 303 (quotation marks, ellipsis, and citations omitted).]

The elements of a private nuisance in fact claim are:

> (1) [the] defendant[] interfered with the use or enjoyment of [the] plaintiff's property rights and privileges; (2) [the defendant's] invasion of the property interests caused [the] plaintiff significant harm; and (3) the invasion was intentional and unreasonable or was otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [*Cleveland*, ___ Mich App at ___; slip op at 7.]

"An act may be found to be a nuisance in fact when its natural tendency is to create danger and inflict injury on person or property." *Wagner v Regency Inn Corp*, 186 Mich App 158, 164; 463 NW2d 450 (1990).

This Court has found standing to exist when the plaintiffs lived near the source of the private nuisance. See *Fortin v Vitali*, 15 Mich App 657, 660; 167 NW2d 355 (1969) (the plaintiffs had standing to maintain a private nuisance action when they lived "near the source of the discomfort constituting a private nuisance," which consisted of "the invasion by odors of plaintiffs' right to the enjoyment of their property"). Moreover, this Court has explained that, "[w]here a private nuisance affects water, a riparian land owner may commence an action for its abatement." *White Lake Improvement Ass'n v Whitehall*, 22 Mich App 262, 272; 177 NW2d 473 (1970).

The evidence previously summarized indicates that Pigeon sustained sufficient harm to pursue his private-nuisance claim. The parties are adjacent property owners. Pigeon owns multiple parcels on the shore of the lake on which Ashkay Island is located. Pigeon has riparian rights in the water. Given the fire and toxic hazards created by Ashkay, Pigeon faces a threat of future injury that presently interferes with his enjoyment of the property. He has presented

evidence that he suffered a disturbance in comforts or conveniences, including his state of mind. Pigeon presented enough evidence to avoid summary disposition on his private nuisance claim.

Pigeon next argues that he is entitled to summary disposition on his nuisance-per-se claim.[6] He reiterates that he has standing to pursue that claim. He further asserts that it is undisputed that the structures on the island are not serviced by an approved driveway or road, in contravention of ordinances, and that a nuisance per se thus exists. Yet it is premature for this Court to conclude that Pigeon is entitled to summary disposition on his nuisance-per-se claim. Ashkay moved for summary disposition on multiple grounds, including that Pigeon's claims are barred by the doctrine of res judicata. The trial court did not definitively resolve the res judicata issue, the parties have not raised that issue on appeal, and Ashkay should remain free to renew its request for summary disposition on that ground below.

In Docket No. 368718, Pigeon challenges the trial court's award of attorney fees and costs to defendant. Pigeon argues that the trial court clearly erred in finding that his action was frivolous under MCL 600.2591. As will be explained, we conclude that it is necessary to vacate the trial court's award of attorney fees and costs to Ashkay.

"This Court reviews for clear error a trial court's finding that a civil action was frivolous." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 18. "A finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court has made a mistake." *Id.*

MCL 600.2591(1) provides, "Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." MCL 600.2591(3)(b) states, " 'Prevailing party' means a party who wins on the entire record." Because we are reversing the grant of summary disposition to Ashkay, the award of attorney fees and costs must be vacated as premature because Ashkay is not yet the prevailing party. See generally *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 525; 892 NW2d 467 (2016) (holding that, because this Court reversed a grant of summary disposition, "the award of [offer-of-judgment] sanctions premised on that grant of summary disposition must be vacated, thereby making it unnecessary to address the specific issues concerning sanctions raised by [the appellant].").

## III. CONCLUSION

In Docket No. 366537, we reverse in part and remand for further proceedings. In Docket No. 368718, we vacate. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young

---

[6] As noted earlier, Pigeon has not sought summary disposition on his private-nuisance claim.