*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF GRAND RAPIDS,

        Plaintiff/Counterdefendant-Appellee,

v

BROOKSTONE CAPITAL, LLC,

        Defendant/Counterplaintiff-Appellant,

and

240 IONIA AVENUE LIMITED DIVIDEND
HOUSING ASSOCIATION LIMITED
PARTNERSHIP, and 345 STATE STREET
LIMITED DIVIDEND HOUSING ASSOCIATION
LIMITED PARTNERSHIP,

        Defendants-Appellants.

FOR PUBLICATION
October 29, 2020
9:05 a.m.

No. 350746
Kent Circuit Court
LC No. 18-006419-CB

Before: LETICA, P.J., and K. F. KELLY and REDFORD, JJ.

REDFORD, J.

      Defendants, Brookstone Capital LLC (Brookstone), 240 Ionia Avenue Limited Dividend Housing Association Limited Partnership (240 Ionia), and 345 State Street Limited Dividend Housing Association Limited Partnership (345 State Street), appeal as of right the trial court's order granting plaintiff summary disposition under MCR 2.116(C)(10) and denying defendants' competing motion for summary disposition under MCR 2.116(I)(2). We affirm.

## I. FACTUAL BACKGROUND

      Brookstone developed 240 Ionia and 345 State Street as affordable low-income housing projects pursuant to the Michigan State Housing Development Authority Act (the MSHDA Act), MCL 125.1401 *et seq.*, following application and approval by the Grand Rapids City Commissioners via adopted resolutions and application and approval by MSHDA. Some portions

-1-

of 240 Ionia and 345 State Street are exempt from ad valorem property taxation under MCL 125.1415a but must each pay plaintiff an annual service charge for public services in lieu of taxes. Plaintiff sued defendants for breaches of agreements for payments in lieu of taxes (PILOT) and unjust enrichment for their failure to pay the amount of charges billed by plaintiff for its 2015, 2016, and 2017 billing cycles as required under plaintiff's Ordinance No. 91-54, as set forth in Article 5, Chapter 9 of Title I of the City Code, Sections 1.410-1.413 (the PILOT Ordinance), and the resolutions that approved the 240 Ionia and 345 State Street projects. Brookstone counterclaimed against plaintiff for a declaratory judgment that plaintiff had to calculate the 240 Ionia and 345 State Street PILOT payments based on 4% of annual shelter rents of all occupants of the subject housing projects, and that plaintiff could not charge amounts based on the ad valorem tax rate respecting the units that were not rent or income restricted. The parties disputed the interpretation and application of the MSHDA Act, particularly MCL 125.1415a, and the PILOT Ordinance. The parties filed opposing motions for summary disposition and the trial court ruled in favor of plaintiff giving rise to this appeal.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 135; 892 NW2d 33 (2016). We also review de novo a trial court's interpretation and application of a statute. *Id*. at 136. "Municipal ordinances are interpreted and reviewed in the same manner as statutes." *Id*. (citation omitted). Therefore, we review de novo a trial court's ordinance interpretation and apply the rules governing statutory interpretation to a municipal ordinance. *Id*.

## III. ANALYSIS

## A. OVERVIEW

Defendants argue that the trial court erred by ruling in favor of plaintiff because plaintiff calculated and charged ad valorem taxes for the market-rate units contrary to plaintiff's PILOT Ordinance. Defendants contend that the PILOT Ordinance bound plaintiff to charge 4% of the annual shelter rents for all occupied units in the subject housing projects whether the tenants were low-income persons or families paying reduced housing charges or were persons or families paying the full market rate. Defendants assert that the PILOT Ordinance complied with MCL 125.1415a. We disagree.

The issues presented in this appeal concern the interpretation of both a state statute and a municipal ordinance. Therefore, we review de novo the trial court's interpretation of both the MSHDA Act and plaintiff's PILOT Ordinance. *Id*. As explained in *Sau-Tuk*:

> When interpreting a statute, our primary goal is to give effect to the intent of the Legislature. If the language of a statute is unambiguous, we presume the Legislature intended the meaning expressed in the statute. A statutory provision is ambiguous only if it conflicts irreconcilably with another provision or it is equally susceptible to more than one meaning. . . . When construing a statute, we must assign every word or phrase its plain and ordinary

meaning unless the Legislature has provided specific definitions or has used technical terms that have acquired a peculiar and appropriate meaning in the law.

Similarly, the goal of construction and interpretation of an ordinance is to discern and give effect to the intent of the legislative body. The most reliable evidence of that intent is the language of the ordinance itself, which must be given its plain and ordinary meaning. When the words used in a statute or an ordinance are clear and unambiguous, they express the intent of the legislative body and must be enforced as written. [*Sau-Tuk*, 316 Mich App at 136-137 (quotation marks and citations omitted).]

Courts "may not pick and choose what parts of a statute to enforce" but "must give effect to every word of a statute if at all possible so as not to render any part of the statute surplusage or nugatory." *Id*. at 144 (citations omitted). Courts "may not speculate regarding legislative intent beyond the words expressed in the statute." *Id*. at 145. "This Court reads the provisions of statutes reasonably and in context, and reads subsections of cohesive statutory provisions together." *Detroit Pub Schs v Conn*, 308 Mich App 234, 247-248; 863 NW2d 373 (2014) (citation omitted).

When courts interpret statutes, they must first look to the specific statutory language to determine the intent of the Legislature, and if the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted. *Universal Underwriters Ins Group v Auto Club Ins Ass'n*, 256 Mich App 541, 544; 666 NW2d 294 (2003). "Judicial construction of a statute is only permitted when statutory language is ambiguous," and ambiguity exists "only if it creates an irreconcilable conflict with another provision or it is equally susceptible to more than one meaning." *Noll v Ritzer (On Remand)*, 317 Mich App 506, 511; 895 NW2d 192 (2016). Courts may not infer legislative intent from the absence of action by the Legislature. *McCahan v Brennan*, 492 Mich 730, 749; 822 NW2d 747 (2012). A "legislature legislates by legislating, not by doing nothing, not by keeping silent." *Id*. (quotation marks and citation omitted). This Court defers "to a deliberate act of a legislative body, and does not inquire into the wisdom of its legislation." *Bonner v City of Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014) (citation omitted).

In *In re Implementing Section 6w of 2016 PA 3341 for Cloverland Electric Coop*, 329 Mich App 163, 178; 942 NW2d 38 (2019) (citation omitted), this Court explained the application of the *in pari materia* doctrine of statutory construction:

Statutes that relate to the same subject matter or share a common purpose are *in pari materia* and must be read together as one law to effectuate the legislative purpose as found in harmonious statutes. If two statutes lend themselves to a construction that avoids conflict, that construction should control. When two statutes are *in pari materia* but conflict with one another on a particular issue, the more specific statute must control over the more general statute.

In *Summer v Southfield Bd of Ed*, 324 Mich App 81, 93; 919 NW2d 641 (2018), this Court explained, however, that the *in pari materia* doctrine is a rule of statutory construction that is not implicated if the language of the statute is unambiguous and the legislative intent is clearly

expressed. In such circumstances, judicial construction is prohibited and this Court must enforce the statute as written. *Id*. "Once the intention of the Legislature is discovered, this intent prevails regardless of any conflicting rule of statutory construction." *Id*. (quotation marks and citation omitted). In *Voorhies v Faust*, 220 Mich 155, 157-158; 189 NW 1006 (1922), our Supreme Court explained:

> The rule, in pari materia, cannot be invoked here, for the reason that the language of the statute is clear and unambiguous.
>
> * * *
>
> The rule, in pari materia, does not permit the use of a previous statute to control by way of former policy the plain language of a subsequent statute, much less to add a condition or restriction thereto found in the earlier statute and left out of the later one. The contention made, if allowed, would go beyond the construction of the statute, and ingraft upon its provisions a restriction which the Legislature might have added but left out.

Statutes should be construed so as to prevent absurd results, injustice, or prejudice to the public interest. *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). In *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008) (alteration and citation omitted), our Supreme Court directed:

> the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons. However, these are not binding on the courts, and while not controlling, the practical construction given to doubtful or obscure laws in their administration by public officers and departments with a duty to perform under them is taken note of by the courts as an aiding element to be given weight in construing such laws and is sometimes deferred to when not in conflict with the indicated spirit and purpose of the legislature.

## B. MCL 125.1415a

For resolution of the issues raised in this appeal, this Court must first consider and interpret MCL 125.1415a of the MSHDA Act, which provides in relevant part:

> (1) If a housing project owned by a nonprofit housing corporation, consumer housing cooperative, limited dividend housing corporation, mobile home park corporation, or mobile home park association is financed with a federally-aided or authority-aided mortgage or advance or grant from the authority, then, except as provided in this section, the housing project is exempt from all ad valorem property taxes imposed by this state or by any political subdivision, public body, or taxing district in which the project is located. The owner of a housing project eligible for the exemption shall file with the local assessing officer a notification of the exemption, which shall be in an affidavit form as provided by the authority. The completed affidavit form first shall be submitted to the authority for certification by the authority that the project is eligible for the exemption. The

-4-

owner then shall file the certified notification of the exemption with the local assessing officer before November 1 of the year preceding the tax year in which the exemption is to begin.

(2) The owner of a housing project exempt from taxation under this section shall pay to the municipality in which the project is located an annual service charge for public services in lieu of all taxes. Subject to subsection (6), the amount to be paid as a service charge in lieu of taxes shall be for new construction projects the greater of, and for rehabilitation projects the lesser of, the tax on the property on which the project is located for the tax year before the date when construction or rehabilitation of the project was commenced or 10% of the annual shelter rents obtained from the project. A municipality, by ordinance, may establish or change, by any amount it chooses, the service charge to be paid in lieu of taxes by all or any class of housing projects exempt from taxation under this act. However, the service charge shall not exceed the taxes that would be paid but for this act.

\* \* \*

(6) Notwithstanding subsection (2), the service charge to be paid each year in lieu of taxes for that part of a housing project that is tax exempt under subsection (1) and that is occupied by other than low income persons or families shall be equal to the full amount of the taxes that would be paid on that portion of the project if the project were not tax exempt. The benefits of any tax exemption granted under this section shall be allocated by the owner of the housing project exclusively to low income persons or families in the form of reduced housing charges.

(7) For purposes of this section only, "low income persons and families" means, with respect to any housing project that is tax exempt, persons and families eligible to move into that project. For purposes of this subsection, the authority may promulgate rules to redefine low income persons or families for each municipality on the basis of conditions existing in that municipality.

The provisions of MCL 125.1415a lack ambiguity. Subpart (1) grants ad valorem property tax exemption to housing projects developed with federal or state aided financing, grants, or advances. It also specifies the process required for the owner to establish eligibility for favorable tax treatment.

Subpart (2) orders tax-exempt housing project owners to pay an annual service charge for public services in lieu of all taxes, i.e., PILOT. Subject to the provisions of Subpart (6), Subpart (2) establishes a default service charge in the amount of the greater of either the property tax amount for the preceding year or 10% of the annual shelter rents obtained from the project.[1] Subpart (2) provides further that a municipality may set the amount of PILOT applicable to all or

---

[1] MCL 125.1451(2)(e) defines "shelter rent" as "the rental or carrying charges established for occupancy in housing projects, exclusive of payments for taxes and charges for heat, light, water, cooking fuel, and other necessary utilities."

any class of housing project by enacting an ordinance that sets the amount, so long as the service charge it imposes does not exceed the ad valorem tax amount that would otherwise apply but for the exemption granted under the MSHDA Act.

Despite the general provisions of MCL 125.1415a(2) respecting PILOT, Subpart (6) clarifies that the service charges to be paid in lieu of taxes by a housing project owner require two calculations. Subpart (6) plainly indicates that the PILOT calculation method must differentiate between the occupants who are low-income persons or families and those who are not. Subpart (6) specifies that the amount to be paid each year respecting occupants "other than low income persons or families shall be equal to the full amount of the taxes that would be paid on that portion of the project if the project were not tax exempt." Subpart (6), therefore, plainly commands that owners shall pay the equivalent of the ad valorem property tax amount for the portions of a project not occupied by low-income persons or families. For the portions of the project occupied by low-income persons or families, the owner must pay the PILOT either as established under Subsection (2) or the amount defined by the municipality's PILOT Ordinance. Subpart (6) lacks ambiguity. Accordingly, a municipality must adhere to and enforce these statutory requirements.

Subpart (7) defines the meaning of the terms "low income persons and families" for purposes of MCL 125.1415a only. The Legislature, therefore, determined that the other sections of the MSHDA Act that define and differentiate between categories of persons, families, and households of low and moderate income such as MCL 125.1411(g), MCL 125.1451(2)(f), MCL 125.1458(2)(e), (g), and (*l*), do not apply for purposes of calculating and charging the applicable PILOT amounts. The first sentence of Subpart (7) specifies that "low income persons and families" "means, with respect to any housing project that is tax exempt, persons and families eligible to move into that project." The definition's use of the word "eligible" requires understanding the word's meaning to enable discernment of the full import of the Legislature's intent. Neither the MSHDA Act in general nor MCL 125.1415a define the term "eligible." "Terms that are not defined in a statute must be given their plain and ordinary meanings, and it is appropriate to consult a dictionary for definitions." *Anzaldua v Neogen Corp*, 292 Mich App 626, 632; 808 NW2d 804 (2011) (citation omitted).

*Merriam-Webster's Collegiate Dictionary* (11th ed) defines the term "eligible" in relevant part as "qualified to participate or be chosen" or "worthy of being chosen." *Black's Law Dictionary* (11th ed) similarly defines the term as, "Fit and proper to be selected or to receive a benefit; legally qualified for an office, privilege, or status." To be eligible, therefore, means to be qualified, worthy, or fit to participate or receive a benefit. In the context of low-income housing, such housing is available to persons who are eligible, i.e., qualified, worthy, and fit to receive a benefit by virtue of their income level. The benefit conferred in the context of low-income housing is paying reduced rent to occupy a unit because of one's low-income status. Persons of financial means do not qualify for rent restricted housing because they lack eligibility to receive the benefit conferred by virtue of their income level. This interpretation of the term "eligible" comports with the overall public purpose of the MSHDA Act as set forth in MCL 125.1401, i.e., to provide safe and sanitary dwelling accommodations within the financial means of low-income persons and families. This interpretation of the term also enables a harmonious interpretation of the plain language of MCL 125.1415a, particularly Subparts (6) and (7).

The second sentence of Subpart (7) grants MSHDA discretion to promulgate rules to redefine who "low income persons or families" are for a given municipality depending on the conditions existing in that municipality. This sentence makes clear that the definition of "low income persons or families" specifically pertains to eligible persons' financial means as compared with the financial wherewithal of the general community.

Defendants argue that the Legislature meant that the terms "low income persons and families" for purposes of MCL 125.1415a encompasses all persons so long as they are eligible to move into the housing project, irrespective of the occupant's income level or the portion of the project occupied. In other words, they argue that the Legislature intended that no distinction between the income levels of occupants or the type of unit a person occupies may be considered for calculating the PILOT. The terms "low income persons and families," they contend, is all encompassing because eligibility means merely being able to move into the project. This interpretation of Subpart (7) is flawed because it forces an unnatural, illogical interpretation of Subpart (6). Defendants' interpretation requires disregarding Subpart (6)'s specific directive to distinguish between occupants of low-income units from occupants of all other portions of a low-income housing project. Defendants' interpretation forces reading into Subpart (6) an unstated distinction between residential and nonresidential tenants. In Subpart (6), however, the Legislature drew a distinct line between "low income persons and families" and tenants "other than low income persons or families." The operative distinguishing feature focuses on income status and commands municipalities to charge owners for the two types of occupants annual PILOT differently. The Legislature plainly required that owners shall be charged equal to the full ad valorem tax amount on the portion of the project that tenants "other than low income persons or families" occupy.

Occupants of market rate units fall within the portions of a low-income housing project occupied by persons "other than low income persons or families." Under Subpart (6), the PILOT charges for all portions of defendants' low-income housing projects occupied by persons "other than low income persons or families" must be "equal to the full amount of the taxes that would be paid on that portion of the project if the project were not tax exempt." Further, Subpart (6) requires that the benefits of tax exemption are to be allocated by the owners solely "to low income persons or families in the form of reduced housing charges." If the phrase "low income persons or families" means as defendants claim, the owners of housing projects would be required to convey the benefits of reduced housing charges to all residential occupants. That, of course, is contrary to the express purpose of the MSHDA Act defined by the Legislature in MCL 125.1401 and is contrary to the plain language of MCL 125.1415a(6). Defendants' interpretation of MCL 125.1415a(7), therefore, would negate the distinction between low-income units and market-rate units by making all residential units subject to reduced housing charges under Subpart (6). Under defendants' interpretation, Subparts (6) and (7) cannot be harmonized without creating an absurd result. MCL 125.1415a(6) plainly does not require or permit conveying the benefit of reduced rent to all residential occupants or permit a municipality to charge owners of low-income housing projects a uniform charge irrespective of the income level of occupants of the project.

We conclude, as did the trial court, that the Legislature intended the meaning clearly expressed when it enacted a statute. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). And because statutes must be interpreted to prevent absurd results, injustice, or prejudice to the public interest, *McAuley*, 457 Mich at 518, we decline to adopt defendants' interpretation. Rather,

-7-

we interpret MCL 125.1415a as requiring that plaintiff impose an annual PILOT charge to be paid by defendant owners of the subject low-income housing projects calculated for the units occupied by low-income persons or families either pursuant to the default amounts set by Subpart (2), or the amount plaintiff established by ordinance as permitted under Subpart (2). Further, MCL 125.1415a(6) requires that plaintiff impose an annual PILOT charge respecting all portions of the subject projects occupied by "other than low income persons or families" equal to the full amount of the ad valorem taxes that would have been required if the projects were not tax exempt, to be paid by defendant owners of the subject projects.

In this case, the record reflects that the trial court considered the plain language of MCL 125.1415a in the context of the purpose of the MSHDA Act, and read the section's subparts in harmony with one another. The trial court properly determined that the statute did not permit the imposition of a uniform PILOT charge based on the annual shelter rent collected for the total number of units in the project. Further, the trial court correctly interpreted the statute as requiring differentiation of PILOT charges for the rental units occupied by low-income persons and families from those occupied by persons other than low-income persons or families who paid the market rate. The trial court did not err by interpreting MCL 125.1415a(1), (2), (6), and (7) together and in harmony. Further, it correctly concluded that plaintiff could appropriately charge 4% of annual shelter rents collected for units occupied by low-income persons or families. It also correctly determined that, under MCL 125.1415a(6), plaintiff must charge an amount equal to the full amount of the ad valorem taxes for the annual shelter rents collected on defendant's market-rate rental units.

## C. THE GRAND RAPIDS PILOT ORDINANCE

Defendants argue that plaintiff's PILOT Ordinance bound plaintiff to impose a uniform PILOT charge based on the total number of units in the project irrespective of the financial status of the persons who occupied the unit and the unit's designation as low-income or market-rate. Defendants contend that the PILOT Ordinance required plaintiff to charge 4% of the annual shelter rents collected for all occupied units. Plaintiff counters that the provision of MCL 125.1415a(6) absent from the PILOT Ordinance respecting PILOT charges for occupancy of market-rate units equal to the ad valorem tax must be read into the ordinance. Plaintiff contends that its ordinance may be understood to have authorized the manner in which it calculated the PILOT charges for the subject low-income housing projects. The parties' respective arguments, therefore, require us to consider and interpret plaintiff's PILOT Ordinance.

Under Const 1963, art 7, § 22, a Michigan municipality's power to adopt ordinances relating to municipal concerns is subject to the Constitution and state law. State law may preempt a regulation by any inferior level of government that attempts to regulate the same subject matter as a higher level of government. See *McNeil v Charlevoix Co*, 275 Mich App 686, 697 n 11; 741 NW2d 27 (2007). "[O]rdinances are treated as statutes for purposes of interpretation and review." *Bonner*, 495 Mich at 221-222 (citation omitted). "Since the rules governing statutory interpretation apply with equal force to a municipal ordinance, the goal of construction and interpretation of an ordinance is to discern and give effect to the intent of the legislative body." *Id.* at 222 (footnote omitted). "The most reliable evidence of that intent is the language of the ordinance itself and, therefore, the words used in an ordinance must be given their plain and ordinary meanings." *Id.* When an ordinance is unambiguous, this Court may not engage in judicial

construction but must enforce the ordinance as written. *Kalinoff v Columbus Twp*, 214 Mich App 7, 10; 542 NW2d 276 (1995) (citations omitted).

In *Ter Beek v City of Wyoming*, 495 Mich 1, 19-20; 846 NW2d 531 (2014), our Supreme Court recently reiterated the fundamental hierarchy of law in Michigan as follows:

> Under the Michigan Constitution, the City's "power to adopt resolutions and ordinances relating to its municipal concerns" is "subject to the constitution and the law." Const 1963, art 7, § 22. As this Court has previously noted, "[w]hile prescribing broad powers, this provision specifically provides that ordinances are subject to the laws of this state, i.e., statutes." *AFSCME v Detroit*, 468 Mich 388, 410; 662 NW2d 695 (2003). The City, therefore, "is precluded from enacting an ordinance if . . . the ordinance is in direct conflict with the state statutory scheme, or . . . if the state statutory scheme preempts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation." *People v Llewellyn*, 401 Mich 314, 322; 257 NW2d 902 (1977) (footnotes omitted). A direct conflict exists when "the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *Id*. at 322 n. 4.

Plaintiff's PILOT Ordinance at times relevant to this matter provided in pertinent part as follows:

> § 1.410. The tax exemption established in [MCL 125.1415(a)(1)] shall apply to housing projects within the boundaries of the City of Grand Rapids which meet all of the following criteria, upon approval of the City Commission:
>
> (1) Projects which are financed with a Federally-aided or State Housing Development Authority-aided mortgage or with an advance or grant from such Authority,
>
> (2) Projects which serve lower-income families, elderly, and/or handicapped, and
>
> (3) Projects which are owned by "consumer housing cooperatives," "qualified nonprofit housing corporations," and "limited dividend housing associations" as defined in Act No. 346 of the Public Acts of 1966, as amended.
>
> § 1.411. Housing projects which qualify under Section 1.410 above shall have the tax exemption provided in [MCL 125.1415a(1)], provided the owner of a housing project has complied with the [MHSDA] Act, is current with all taxes and assessments on the subject property, and has annually filed before August 1st an audited financial statement for each previous calendar year, as requested, with the City Assessor.
>
> § 1.412. The service charge in lieu of property taxes shall be paid by the housing project owner as follows:

(1) . . . . Annual shelter rent is defined as the total collections from all occupants of a housing project exclusive of any charges for gas, electricity, heat, or other utilities furnished to the occupants.

(2) Housing projects approved for tax exemption under this ordinance on or after January 1, 1991 shall pay a service charge in the amount equal to four (4) percent of annual shelter rent or may choose to pay a service charge in the amount equal to one (1) percent of annual shelter rent in addition to making an annual contribution to the City of Grand Rapids' Affordable Housing Fund in an amount equal to two (2) percent of annual shelter rent. If the annual contribution to the Housing Fund is not made, the service charge shall revert to four (4) percent of annual shelter rent.

Plaintiff's PILOT Ordinance lacks ambiguity. Plaintiff enacted the ordinance as permitted under MCL 125.1415a(2). Sections 1.410 and 1.411 authorize tax exemption of housing projects developed within plaintiff's boundaries as permitted under the MSHDA Act. The PILOT Ordinance indicates that plaintiff opted under MCL 125.1415a(2) to charge annual service fees in lieu of property taxes in an amount different from the statutory default options. Section 1.412 requires PILOT charge payments by a housing project owner in the amount of 4% of annual shelter rent which is defined as the total collections from all occupants of a housing project exclusive of charges for utilities provided to them. Section 1.412, however, fails to follow all requirements of MCL 125.1415a(6). Notably absent from § 1.412 is any provision that honors MCL 125.1415a(6)'s command to charge fees in lieu of taxes equal to the ad valorem tax for portions of projects occupied by "other than low income persons and families." Nothing in MCL 125.1415a authorizes a municipality to impose PILOT charges in such uniform manner irrespective of the financial status of occupants of low-income housing projects. As such, plaintiff's PILOT Ordinance is defective to the extent that it fails to comply with MCL 125.1415a(6). Therefore, a direct conflict exists between the PILOT Ordinance and MCL 125.1415a because the ordinance essentially permits what the statute prohibits. The plain unambiguous language of MCL 125.1415a(6) and the plain unambiguous language of the PILOT Ordinance cannot be read together to eliminate the direct conflict. Accordingly, to the extent that the PILOT Ordinance conflicts with state law, it is preempted and that portion of it is unenforceable. *Ter Beek*, 495 Mich at 20.

Defendants seek enforcement of the PILOT Ordinance to evade plaintiff's charges of the equivalent of ad valorem tax for the portions of the subject housing projects occupied by other than low-income persons or families. An ordinance that conflicts with a superior authorizing statute, however, cannot be enforced to the extent that the inferior legislative body enacted an ordinance that fails to do what the superior legislative body required. Enforcement of the plain language of the PILOT Ordinance in this case in the manner desired by defendants, therefore, would violate state law.

Accordingly, defendants' arguments in this regard lack merit because they incorrectly interpret MCL 125.1415a and claim entitlement to treatment contrary to the specific, unambiguous directive set forth in MCL 125.1415a(6). The trial court, therefore, did not err by not interpreting and enforcing the PILOT Ordinance as requested by defendants.

MSHDA argues in its amicus curiae brief that it has always interpreted MCL 125.1415a in the same manner as defendants and it argues that the PILOT Ordinance interprets and applies MCL 125.1415a correctly. MSHDA urges this Court to reverse the trial court. We do not agree with MSHDA's arguments.

Courts generally give respectful consideration of the interpretation of a statute by those charged with executing it and courts ought not overrule the agency without cogent reasons. *In re Rovas Against SBC Mich*, 482 Mich at 103. "However, the agency's interpretation is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *Id*. MSHDA's interpretation and its historic application of MCL 125.1415a conflicts with the Legislature's intent as expressed in the plain language of MCL 125.1415a. For the reasons previously explained in this opinion regarding the proper interpretation of MCL 125.1415a, we decline adopting MSHDA's errant interpretation.

## D. THE INAPPLICABILITY OF *IN PARI MATERIA* TO THE MATTER AT BAR

Plaintiff argues that the trial court and this Court should look beyond the unambiguous language of the PILOT Ordinance and interpret it as having the absent provision of MCL 125.1415a(6)'s directive either inherent in it or engrafted into it by employing the *in pari materia* statutory construction doctrine. The trial court adopted plaintiff's argument and construed the PILOT Ordinance as authorizing the charging of the equivalent of ad valorem tax for the occupied market-rate units in the subject projects. The trial court based its ruling in part by employing the *in pari materia* statutory construction doctrine to harmonize MCL 125.1415a and the PILOT Ordinance on the grounds that "you have to read all of these elements *in pari materia* and if you do that, you can't help but reach the conclusion that the City has properly calculated the PILOTs and the ad valorem taxes in this case."

Where, as here, the legislative intent of the Legislature in enacting MCL 125.1415a can be discerned based on the statutory section's plain language, it must be enforced as written and no further judicial construction is required or permitted. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). The plain language of the PILOT Ordinance also clearly expresses the inferior legislative body's intent, similarly prohibiting further judicial construction. *Id*. "Once the intention of the Legislature is discovered, this intent prevails regardless of any conflicting rule of statutory construction." *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 372; 781 NW2d 310 (2009). As explained in *Voorhies*, 220 Mich at 157, however, the *in pari materia* doctrine of statutory construction cannot be invoked where the language of a statute is clear and unambiguous. Further, the doctrine does not permit adding a condition or restriction of a previously enacted statute that the legislative body left out of a later enacted statute. *Id*. at 158. Our Supreme Court reiterated in *Tyler v Livonia Pub Sch*, 459 Mich 382, 392; 590 NW2d 560 (1999) (citations omitted), the principle articulated in *Voorhies* that "the interpretive aid of the doctrine of *in pari materia* can only be utilized in a situation where the section of the statute under examination is itself ambiguous." This Court has similarly reiterated the same fundamental principles. *Summer*, 324 Mich App at 93.

In this case, the trial court invoked the *in pari materia* doctrine to reconcile the statute and the ordinance. Under *Voorhies*, *Tyler*, and *Summer*, however, the *in pari materia* doctrine lacked

-11-

applicability in this case because both legislative enactments, the statute and the ordinance, lacked ambiguity. Accordingly, the trial court erred in this regard.

Plaintiff invoked the *in pari materia* doctrine based on *Hughes v Almena Twp*, 284 Mich App 50; 771 NW2d 453 (2009). Plaintiff contends that *Hughes* requires that a statute and an ordinance should be read *in pari materia*. Plaintiff also relied on *Hughes* for the proposition that the provisions of a statute may be read into an ordinance. Plaintiff asserted that, as in *Hughes*, the absent statutory requirement set forth in MCL 125.1415a(6) must be read into its PILOT Ordinance to reconcile and harmonize the MSHDA Act with the ordinance. The record indicates that the trial court agreed.

In *Hughes*, this Court considered whether the trial court correctly held that the township's zoning board's decision upholding the township board's denial of a preliminary site plan lacked authorization by law or proper procedure because the zoning ordinance's provisions regarding review and approval of a planned unit development conflicted with the Township Zoning Act's review and approval process, in part because the township's ordinance did not specify that the township board had to conduct a public hearing. *Id*. at 62-66. This Court ruled that the ordinance remained valid despite failing to mention the township board's statutory duty to hold a public hearing. This Court explained:

> Additionally, the ordinance is not invalid for failing to mention the township board's statutory duty to hold a public hearing. The Legislature is presumed to be aware of all existing statutes when enacting a new statute, particularly laws on the same subject. Statutes that are *in pari materia* must be read together as one law and should be reconciled if possible even if they appear to conflict. Here, the ordinance requires the planning commission, but not the township board, to hold a public hearing. The township board was required to hold a public hearing pursuant to MCL 125.286c(5), which it did in this case. Thus, we read this requirement into the ordinance. [*Id*. at 66 (citations omitted).]

The *Hughes* Court invoked the *in pari materia* doctrine without finding an ambiguity in the controlling statute or the township's ordinance and relied on the doctrine for the general principle that laws on the same subject should be read together and reconciled if possible even if they appear to conflict. The *Hughes* Court, however, applied the doctrine of statutory construction to engraft into the ordinance provisions of the controlling statute absent from the ordinance. Both the application of the doctrine and the engrafting of an absent statutory provision into the ordinance contradict our Supreme Court's explanations in *Voorhies* and *Tyler* regarding when and to what extent the *in pari materia* doctrine may be used to construe statutory language. *Hughes* stands alone in its use of the doctrine to engraft statutory requirements into an ordinance that failed to incorporate the statute's requirement. We question the validity of the trial court's reliance on *Hughes* because the principles articulated in *Voorhies* and *Tyler* by our Supreme Court prevent the invocation of the *in pari materia* doctrine in this case and do not permit the doctrine's use to engraft into the defective PILOT Ordinance the absent statutory requirement set forth in MCL 125.1415a(6) as done by the trial court. Nevertheless, we are not compelled to disturb the trial court's decision.

The trial court did not have to reconcile the statute with the defective ordinance. Because MCL 125.1415a lacked ambiguity, Michigan law required that it be enforced as written. The PILOT Ordinance, however, directly conflicted with MCL 125.1415a(6) making it unenforceable to the extent that it conflicted with state law. The trial court, therefore, could not enforce the ordinance as written, and as desired by defendants, because doing so would have required plaintiff to impose uniform PILOT charges in a manner impermissible under the statute. The trial court properly declined to enforce the ordinance to the extent that it conflicted with state law.

## E. THE UNDERLYING BREACH OF AGREEMENT BY DEFENDANTS

Moreover, lost in all of the arguments made by defendants regarding justification for interpreting MCL 125.1415a to evade what MCL 125.1415a(6) requires, is the core issue whether defendants breached the contracts between themselves and plaintiff. This case required the trial court to determine not only the proper interpretation of MCL 125.1415a and the PILOT Ordinance, but also whether defendants breached the contracts between plaintiff and defendants. The record establishes that the parties admitted the essential facts of the case and agreed that no genuine issue of material fact existed precluding summary disposition. The trial court examined all of the record evidence and determined that the parties had entered contracts, the terms of which provided defendants the benefits of tax exemption for the low-income housing projects pursuant to MCL 125.1415a in exchange for PILOT pursuant to MCL 125.1415a. The record reflects that 240 Ionia's and 345 State Street's limited partnership agreements specifically acknowledged that the "PILOT Agreement" in each instance constituted the resolution passed by the City Commission that approved the PILOTs for each low-income housing project. The trial court appropriately discerned that defendants' managing members were fully aware the resolutions specified that plaintiff would impose annual PILOT charges in compliance with the provisions of MCL 125.1415a, including the different charges for units occupied by low-income tenants and market-rate units as directed under MCl 125.1415a(6). The trial court, therefore, did not substitute the resolutions for the defective PILOT Ordinance and did not treat them as the de facto ordinance because it recognized and specifically acknowledged that Michigan law does not permit plaintiff to legislate by resolution. The trial court's decision in this regard comports with *Rollingwood Homeowners Corp v City of Flint*, 386 Mich 258, 267; 191 NW2d 325 (1971). The trial court correctly determined that the resolutions to which the parties agreed constituted the PILOT Agreements. The trial court properly considered the resolutions among other evidence as defining the terms of the parties' contracts. The trial court did not err in this regard.

The record also reflects that, when billed pursuant to the parties' contracts, defendants refused to pay the contractually defined amounts required by plaintiff and defendants thereby breached the agreements. The trial court correctly concluded that, based upon the admissible evidence before it, defendants breached the agreements and owed plaintiff the difference between what defendants paid under their incorrect PILOT calculation method based on the defective ordinance and the amount plaintiff billed that accorded with the contracts' terms and MCL 125.1415a, including MCL 125.1415a(6). Because the parties' agreements complied with MCL 125.1415a, they were valid and the trial court could enforce them. The trial court did not have to engraft the provisions of the statute into the defective PILOT Ordinance to make it comply with the statute when the parties' agreements required compliance with state law. The trial court, therefore, did not err by enforcing the terms of the parties' contracts and enforcing the PILOT Ordinance to the extent that it did not directly conflict with state law.

## IV. CONCLUSION

We hold that the trial court correctly determined that MCL 125.1415a of the MSHDA Act required plaintiff to calculate the annual PILOT charges for the subject low-income housing projects by distinguishing the portions of the properties occupied by low-income persons and families from the portions occupied by other than low-income persons or families. The trial court correctly ruled that plaintiff had a statutory obligation to charge defendants fees based upon plaintiff's PILOT Ordinance in the amount of 4% of the annual shelter rents for the rents collected from low-income persons and families who occupied the housing projects, exclusive of any charges for gas, electricity, heat, or other utilities furnished to the occupants, and charge defendants pursuant to MCL 125.1415a(6) in amounts equal to the ad valorem taxes for the portions of the housing projects occupied by other than low-income persons or families. The trial court's decision properly comported with and enforced the plain language of MCL 125.1415a and enforced plaintiff's PILOT Ordinance to the extent to which it complied with state law. The trial court, therefore, properly declined to enforce the PILOT Ordinance as written to charge a uniform amount for all units of the subject projects because the ordinance failed to fully comply with and conflicted with MCL 125.1415a(6). Further, the trial court correctly treated the resolutions as evidence in conjunction with other evidence of the terms of the parties' contractual agreements. The trial court correctly ruled, based upon the admissible evidence before it, that defendants breached the terms of their contracts with plaintiff and were liable for the difference between what they paid and the amount they were obligated by contract to pay plaintiff.

Affirmed. No taxable costs pursuant to MCR 7.219, a question of public policy involved.

/s/ James Robert Redford
/s/ Anica Letica
/s/ Kirsten Frank Kelly

-14-