*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PAUL E. BUCHANAN.

DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS, CORPORATIONS, SECURITIES & COMMERCIAL LEASING, and BOARD OF EXAMINERS IN MORTUARY SCIENCE,

      Petitioners-Appellees,

v

PAUL E. BUCHANAN,

      Respondent-Appellant,

and

GENERATIONS FUNERAL & CREMATIONS SERVICES, INC.,

      Respondent.

FOR PUBLICATION
March 13, 2026
1:06 PM

No. 369913
Oakland Circuit Court
LC No. 2023-200075-AA

*In re* GENERATIONS FUNERAL & CREMATIONS SERVICES, INC.

DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS, CORPORATIONS, SECURITIES & COMMERCIAL LEASING, and BOARD OF EXAMINERS IN MORTUARY SCIENCE,

      Petitioners-Appellees,

v

No. 369989

GENERATIONS FUNERAL & CREMATIONS
SERVICES, INC.,

Respondent-Appellant,

and

PAUL E. BUCHANAN,

Respondent.

_____

Before: FEENEY, P.J., and GARRETT and BAZZI, JJ.

GARRETT, J.

This professional-disciplinary action concerns respondents' operation of three unlicensed facilities that offered funeral and cremation services. No funerals or cremations occurred at the facilities, and no human remains were brought to the facilities. Rather, the facilities were "arrangement offices" where services such as cremations and burial services could be purchased along with funeral and cemetery merchandise. The Board of Examiners in Mortuary Science (the Board) determined that respondents violated Michigan's Occupational Code, MCL 339.101 *et seq.*, and related administrative rules by engaging in the practice of mortuary science at the three establishments without a mortuary-science license. Respondents appealed the Board's determination to the circuit court, which affirmed. Respondents now appeal by leave granted[1] to this Court. Because the lower tribunals properly determined that respondents' activities at the unlicensed locations violated the unambiguous statutory and administrative provisions, we affirm.

I. FACTS AND PROCEEDINGS

Respondent Paul E. Buchanan has been a licensed mortuary-science practitioner since 1988. He is the designated manager of respondent Generations Funeral & Cremations Services, Inc. (GFCS). GFCS is a funeral establishment under the Mortuary Science Act (MSA), Article 18 of the Occupational Code, MCL 339.1801 through MCL 339.1812. GFCS had four locations—a licensed establishment on Grand River Avenue in Farmington Hills and three unlicensed offices in Ann Arbor, Taylor, and Shelby Township. The Taylor location had a sign that stated, "Generations Funeral and Cremation" along with a window advertisement offering "Simple Cremation" for $795. After the commencement of these proceedings, the Taylor location closed

_____

[1] *In re Paul E Buchanan,* unpublished order of the Court of Appeals, entered September 26, 2024 (Docket No. 369913); *In re Generations Funeral & Cremations Servs Inc*, unpublished order of the Court of Appeals, entered September 26, 2024 (Docket No. 369989). After granting respondents' applications for leave to appeal, this Court consolidated the appeals. *In re Paul E Buchanan*; *In re Generations Funeral & Cremations Servs Inc*, unpublished order of the Court of Appeals, entered January 9, 2025 (Docket Nos. 369913, 369989).

because the roof collapsed. Signs at the Ann Arbor and Shelby Township locations stated, "Generations Funeral & Cremation Services."

GFCS also had a website, www.generationsfuneralservice.com, that advertised all four locations. The website identified the Farmington Hills location as a funeral establishment and the other three locations as arrangement offices at which memorial and burial services could be arranged and sold along with cremations, funeral merchandise, and cemetery merchandise. The arrangement offices were open during regular business hours and sold both prepaid (before death) and at-need (after death) contracts and services. No human remains were transported to or from the arrangement offices, and no embalmings, cremations, viewings, or ceremonies occurred at those locations. Funeral directors and unlicensed clerical staff worked at the arrangement offices. The funeral directors were licensed mortuary-science practitioners. GFCS employed five mortuary-science practitioners, including Buchanan; two worked at the Farmington Hills location, and three worked at the other three locations.

These proceedings began after Gordon Mydlarz went to the Taylor arrangement office to inquire about a cremation. He found it odd that the location was not "an actual funeral home" and researched the issue. Believing that GFCS was conducting business in violation of the Occupational Code, Mydlarz filed a complaint with the Corporations, Securities & Commercial Licensing Bureau (the Bureau), an agency within the Department of Licensing and Regulatory Affairs (LARA). The Bureau investigated the matter and filed a formal complaint against GFCS and Buchanan.[2]

The Bureau alleged that GFCS engaged in funeral directing and the practice of mortuary science at the arrangement offices without a required funeral-establishment license, contrary to statutory law and administrative code provisions. The Bureau alleged that GFCS violated the provisions by meeting with customers for the purpose of arranging at-need funeral-directing services and "services that involve supervising the disposition of dead human bodies" and by using terminology in advertisements that indicated funeral-directing services were available at those locations. Against Buchanan, the Bureau alleged that, as GFCS's designated manager, he was responsible for GFCS's operation and management, its activities at the arrangement offices, and its advertising. The Bureau commenced proceedings under the Administrative Procedures Act of 1969, MCL 24.201 *et seq*., and the Occupational Code to determine whether disciplinary action was warranted.

The parties agreed to resolve the matter without an evidentiary hearing and submitted a stipulation of facts, briefs, and joint exhibits to Administrative Law Judge (ALJ) David Marmon. Respondents argued that they did not violate the Occupational Code because the unlicensed facilities did not conduct any activities involving dead bodies. They also argued that Michigan does not regulate the location of a funeral director's office, and no statute references off-site cremations. They maintained that they complied with the Prepaid Funeral and Cemetery Sales Act (the Prepaid Act), MCL 328.211, *et seq*., which governs prepaid funeral contracts, because all

---

[2] The formal complaint was a single complaint with two different complaint numbers—one pertaining to GFCS and one pertaining to Buchanan. The two proceedings were ultimately consolidated.

activities involving dead bodies (cremations, burials, and funerals) occurred at the Farmington Hills location, which is licensed, and denied that their advertising misled the public to believe that funerals or cremation services were performed at the arrangement offices. They maintained that the arrangement offices had operated for 15 years. In addition, respondents asserted that internet vendors offered goods and services related to funerals online with no objection from the Bureau. Respondents relied on an affidavit that Buchanan executed and a letter from their attorney, Mark Bucchi,[3] which they attached to their brief.

The Bureau argued that ALJ Marmon should strike Buchanan's affidavit because it was not part of the record, contained hearsay, and referenced settlement negotiations. The Bureau rejected respondents' reliance on the Prepaid Act, characterizing that argument as a "red herring," because respondents admitted that they sold both prepaid and at-need contracts for services and merchandise at the unlicensed locations. The Bureau argued that the Occupational Code's definitions of "funeral establishment," "practice of funeral directing," and "practice of mortuary science," taken together, established respondents' violations and that, as GFCS's designated manager, Buchanan was responsible for GFCS's conduct. In addition, the Bureau asserted that the Occupational Code explicitly required a "branch establishment" to comply with the rules and requirements for a funeral establishment, and respondents could not rely on the license for the Farmington Hills location to practice mortuary science at the unlicensed locations. In short, the Bureau maintained that respondents violated the Occupational Code and related provisions of the Michigan Administrative Code by practicing mortuary science at the unlicensed locations and advertising services as available from those locations.

ALJ Marmon issued a hearing report setting forth his findings of fact and conclusions of law. He declined to consider Buchanan's affidavit on the basis that it constituted an improper expansion of the record beyond what the parties agreed to in their stipulated facts. He also determined that the affidavit was "hearsay and contain[ed] hearsay within hearsay." ALJ Marmon likewise declined to consider Bucchi's letter on the basis that it discussed inadmissible settlement negotiations, contrary to MRE 408. Substantively, ALJ Marmon determined that GFCS engaged in the practice of mortuary science at the unlicensed locations by engaging in funeral directing at the locations. MCL 339.1801(f) defines the "practice of mortuary science" as "the practice of embalming or the practice of funeral directing, or both." ALJ Marmon determined that GFCS engaged in "funeral directing," as defined in MCL 339.1801(e), because it represented itself as supervising the burial and disposal of a dead body, or managing a funeral establishment for the preparation, disposition, and care of a dead body at the unlicensed locations. ALJ Marmon opined that GFCS's activities at the locations clearly fell within the definition of funeral directing, which the practice of mortuary science included, and that GFCS's practice of mortuary science without an establishment license violated MCL 339.604(h).

Next, ALJ Marmon determined that GFCS violated Mich Admin Code, R 339.18941(2) (Rule 41), which prohibits a funeral establishment from doing business at an unlicensed location and from advertising a service as available at an unlicensed location. ALJ Marmon determined

---

[3] Although respondents are now represented by separate counsel, Bucchi represented both respondents during the proceedings before ALJ Marmon.

that the three unlicensed locations were funeral establishments under MCL 339.1801, therefore subjecting GFCS to penalties under MCL 339.604(c). He found unpersuasive respondents' argument that the statutory and regulatory provisions were inapplicable because no activities involving the handling of dead bodies occurred at the unlicensed facilities. He also found unavailing respondents' claim that GFCS's prepaid contracts indicated that not every activity— such as cremations, burials, and funerals—must occur on site. ALJ Marmon opined that the statutory language was unambiguous.

Regarding Buchanan, ALJ Marmon determined that, under Mich Admin Code, R 339.18937(2), the designated manager of a funeral establishment is responsible for the establishment's violation of applicable laws. Buchanan was therefore responsible for GFCS's violations of MCL 339.1806(3), MCL 339.604(h), and Rule 41. Finally, regarding the sanction to be assessed as a result of the violations, ALJ Marmon declined to issue a recommendation and instead left it to the Board[4] to determine the appropriate sanction.

The Board adopted ALJ Marmon's hearing report, determining that respondents violated the Occupational Code and related administrative rules. The Board fined Buchanan $10,000, required him to take and pass the mortuary-science licensing examination, and required him to submit his test results to the Bureau. The Board also suspended Buchanan's license for one year, or until the terms of its order were met, whichever was later. The Board indicated it would deny future applications for licensure unless the terms of its order were met. In addition, the Board fined GFCS $10,000 and required GFCS to close the unlicensed facilities or obtain separate funeral-establishment licenses within 30 days. The Board suspended GFCS's license until the terms of its order were met and advised it would not renew GFCS's license for the Farmington Hills facility until the other conditions were met.

Respondents appealed to the circuit court, which affirmed. Respondents now appeal to this Court.

## II. STANDARD OF REVIEW

Issues involving statutory interpretation are questions of law, which we review de novo. *Yellow Tail Ventures, Inc v City of Berkley*, 344 Mich App 689, 700; 1 NW3d 860 (2022). We review rulings by disciplinary subcommittees of regulated professions under Const 1963, art 6, § 28. *Bureau of Prof Licensing v Butler*, 322 Mich App 460, 464; 915 NW2d 734 (2017). "This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clear-error standard of review." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 431; 906 NW2d 482 (2017). A circuit court conducting "a direct review of an administrative decision must determine whether the action was authorized by law and if the decision was supported by competent, material, and substantial evidence." *Motycka v Gen Motors Corp*, 257 Mich App 578, 580-581; 669 NW2d 292 (2003); see also Const 1963, art 6, § 28.

---

[4] The Board is a statutory entity within the Bureau. MCL 339.307, MCL 339.1802.

"Substantial evidence" is such that reasonable persons would accept it as adequate proof to support a decision. *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007). A decision is not "authorized by law" under Const 1963, art 6, § 28, if it: (1) violates a statute or a constitutional provision, (2) exceeds the agency's statutory authority or jurisdiction, (3) is made through unlawful procedure resulting in material prejudice, or (4) is arbitrary and capricious. *In re Sangster*, 340 Mich App 60, 67; 985 NW2d 245 (2022). "This Court must review the entire record, not just the portions that support an agency's findings, when assessing whether the agency's decision was supported by competent, material, and substantial evidence on the whole record." *Id.* "[I]t does not matter that the contrary position is supported by more evidence . . . but only whether the position adopted by the agency is supported by evidence from which legitimate and supportable inferences were drawn." *Id.* (quotation marks and citation omitted). A reviewing court should not substitute its decision for the administrative tribunal's decision, even if the court might have reached a different outcome. *Dep't of Licensing & Regulatory Affairs v Gordon*, 323 Mich App 548, 558; 919 NW2d 77 (2018). Courts defer to an agency's factual findings, particularly regarding witness credibility and evidentiary conflicts. *Id.*

## III. LEGAL PRINCIPLES

In matters of statutory interpretation, "the primary goal is to discern and give effect to the legislative intent that may reasonably be inferred from the language of the statute." *AFSCME Local 25 v Wayne County*, 297 Mich App 489, 497; 824 NW2d 271 (2012) (quotation marks and citation omitted). Courts "may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Bay City v Bay County Treasurer*, 292 Mich App 156, 166-167; 807 NW2d 892 (2011) (quotation marks and citation omitted). "When the words used in a statute or an ordinance are clear and unambiguous, they express the intent of the legislative body and must be enforced as written." *Sau-Tuk Indus, Inc v Allegan County*, 316 Mich App 122, 137; 892 NW2d 33 (2016). Statutory language is ambiguous if it is vulnerable to "more than one reasonable interpretation." *Charter Twp of Pittsfield v Washtenaw County Treasurer*, 338 Mich App 440, 450; 980 NW2d 119 (2021).

When construing a statute, courts are to give meaning to every word to avoid an interpretation that would "render any part surplusage or nugatory." *Christenson v Secretary of State*, 336 Mich App 411, 420; 970 NW2d 417 (2021) (quotation marks and citation omitted). Each word and phrase in the statute must be given its common and ordinary meaning. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012). Although we give deference to an administrative agency's interpretation of a statute, *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 107; 754 NW2d 259 (2008), courts are "the final arbiter of a statute's meaning," *id.* at 107. "But, in the end, the agency's interpretation cannot conflict with the plain meaning of the statute." *Id.* at 108.

Under the Occupational Code, a person may not engage in the practice of a regulated occupation, such as mortuary science, without a license to do so. MCL 339.601(1) provides:

> A person shall not engage in or attempt to engage in the practice of an occupation regulated under this act or use a title designated in this act unless the

person possesses a license or registration issued by the department[5] for the occupation.

A "person" includes a person or a company.[6]  Similarly, Rule 41 prohibits a person from advertising a mortuary-science service as available from an unlicensed location.  At the time relevant to these appeals, Rule 41 stated, "A funeral establishment shall not do business in a location which is not licensed as a funeral establishment and shall not advertise a service as available from an unlicensed location."[7]

MCL 339.1806(7) authorizes the Bureau to investigate funeral establishments for possible violations of the Occupational Code and authorizes the Board to revoke the license of a funeral establishment as a penalty for such violations.  That provision states:

> The department may inspect a funeral establishment or a branch of a funeral establishment, and the funeral establishment or branch must meet the requirements of section 1809 and any other standards and requirements established by rule of the department under this act.  The department may revoke a license for a failure to meet any of the standards and requirements described in this subsection under the procedure set forth in this article.

In addition, the Occupational Code provides that a person who violates a code provision for which a penalty is not otherwise set, or violates a rule of professional conduct, is subject to the penalties set forth in MCL 339.602.[8]  Those penalties include a $10,000 fine and the suspension and revocation of a license.  MCL 339.602(b), (d), and (e).

---

[5] The "department" refers to LARA.  MCL 339.104(1).

[6] MCL 339.105(5) provides:

"Person" means any of the following:

(a) An individual.

(b) A sole proprietorship, partnership, association, corporation, limited liability company, or common law trust.

(c) A combination of persons described in subdivision (a) or (b).

(d) A department, board, school, institution, establishment, or governmental entity.

[7] Rule 41 has since been amended.  We rely on the version of that provision, and other referenced provisions, in effect at the time of the facts giving rise to these appeals.

[8] The Occupational Code states that a person who violates "a rule of conduct of an occupation," or "any other provision of this act or a rule promulgated under this act for which a penalty is not otherwise prescribed" is "subject to the penalties prescribed in [MCL 339.602]."  MCL 339.604(c), (h).

## IV. DISCUSSION

### A. MORTUARY SCIENCE AND FUNERAL DIRECTING

Respondents argue that their activities at the unlicensed locations did not constitute "funeral directing" or "engaging in the practice of mortuary science" in violation of the MSA and Rule 41 because the activities did not involve the handling of dead bodies. Under the relevant statutory definitions, respondents' argument is unavailing.

The MSA defines a "funeral establishment" as "a place of business used in the care and preparation for burial or transportation of a dead human body *or a place where an individual represents that he or she is engaged in the profession of undertaking or the practice of mortuary science*." MCL 339.1801(b) (emphasis added). Accordingly, a funeral establishment is not limited to a place where dead human bodies are processed, as argued by respondents—the definition contains a second criterion. Where an individual represents at a location that they are engaged in the practice of mortuary science or undertaking, that location is considered a "funeral establishment," and the MSA requires a license for such establishments. MCL 339.1809(1)(a).

MCL 339.1801(f) defines the "practice of mortuary science" as "the practice of embalming or the practice of funeral directing, or both." The MSA defines the "practice of funeral directing" as:

> [E]ngaging in or representing oneself as engaging in the supervising of the burial and disposal of a dead human body, managing a funeral establishment for the preparation, disposition, and care of a dead human body, or using, in connection with the user's name or funeral establishment, the word "funeral director", "funeral service professional", "undertaker", or "mortician", or any other title embodying the words "mortuary science" or otherwise implying that the individual is engaged as a funeral director. [MCL 339.1801(e).]

"Funeral directing" therefore encompasses the supervision of the burial and disposal of a dead human body, and the management of a funeral establishment for the preparation, disposition, and care of a dead human body. MCL 339.1801(e) corresponds with the MSA provision applying to authorized activities of a licensee, which provides, in relevant part:

> The individual licensed to engage in the practice of mortuary science may direct the burial or disposal of a dead human body and may maintain a funeral establishment for the preparation and disposition, or for the care of a dead human body and may, in connection with the individual's name or the name of the funeral establishment use the words "funeral director", "undertaker", "mortician", "mortuary science", or a word of similar meaning as approved by the department. [MCL 339.1805.]

To read the above provisions as applying to embalming only would nullify the references to funeral directing, and we must consider every word in an unambiguous statute and avoid an interpretation that would render any portion "a surplusage or nugatory." *Christenson*, 336 Mich App at 420.

The MSA further provides that a license is required at the location where a person engages in mortuary science, and the location must be fixed:

> A person may only engage in the practice of mortuary science at a fixed location. A person shall not open or maintain a place for practice, or hold itself out as engaging in the practice of mortuary science, without an establishment license issued by the department. An establishment license under this subsection is issued for a specific location only. The holder of a license for the practice of mortuary science may conduct a funeral in another licensed funeral establishment at a church, home, public hall, lodge room, or other fixed place or at another establishment that is owned by the person and that meets the requirements of section 1809. [MCL 339.1806(3).]

To obtain an establishment license, the applicant must meet certain criteria.[9] Additionally, the holder of a mortuary-science license must register with the city in which the holder intends to practice. MCL 339.1807(2).

Under MCL 339.1806(3) and MCL 339.1807(2), GFCS's establishment license was issued for its Farmington Hills location only. Because the MSA requires that each location be licensed, the unlicensed locations could not rely on the license for the Farmington Hills location. MCL 339.1809(7) states, "A branch establishment is subject to all of the requirements or rules relating to a funeral establishment."

ALJ Marmon correctly determined that the statutory language of the MSA is plain and unambiguous. Accordingly, it must be enforced as written. *Sau-Tuk Indus,* 316 Mich App at 137. Respondents admit that GFCS employed five mortuary-science practitioners who utilized the title of "funeral director," three who worked in the unlicensed locations and two who worked at the

---

[9] The MSA provides in relevant part:

> The department shall not issue or renew an establishment license under subsection (3) unless the applicant certifies that either of the following is met at the time of application:

> (a) The applicant, or a person that has a controlling interest in, or that is under common ownership with, the applicant, is registered with the department under section 6 of the prepaid funeral and cemetery sales act, 1986 PA 255, MCL 328.216.

> (b) The applicant has a contract with a registrant under which the registrant sells, provides, or agrees to sell or provide merchandise, funeral services, or cemetery services under a prepaid contract on behalf of the funeral establishment. As used in this subdivision and subsection (6), "cemetery services", "funeral services", "merchandise", "prepaid contract", "provider", and "registrant" mean those terms as defined in the prepaid funeral and cemetery sales act, 1986 PA 255, MCL 328.211 to 328.235. [MCL 339.1806(4).]

Farmington Hills location.  In addition, respondents acknowledge that GFCS conducted business at the unlicensed locations, and the business included both prepaid and at-need contract sales and arrangements of funeral services and merchandise.  In light of those admissions, ALJ Marmon properly determined that respondents engaged in the practice of mortuary science at the unlicensed locations, and the circuit court properly concluded that the record supported ALJ Marmon's decision.

We note that amicus, the Michigan Funeral Directors Association (MFDA), asserts that the term "funeral directing" does not encompass every task that funeral directors or their unlicensed staff perform.  Specifically, the MFDA states that the MSA does not regulate, and no license is required for, the making of at-need arrangements and the sale of services and merchandise.  We need not attempt to define all tasks a licensed funeral director may perform, or those that unlicensed staff members may perform.  Doing so would exceed the scope of these appeals and constitute an impermissible advisory opinion because the scope is limited to the provision of services at the unlicensed locations.  This Court does not issue advisory opinions "that have no practical legal effect in a case."  *In re Smith*, 324 Mich App 28, 41; 919 NW2d 427 (2018) (quotation marks and citation omitted).  Further, questions regarding the tasks falling within the definition of funeral directing are best directed to the Legislature rather than this Court.

## B.  THE PREPAID ACT

Respondents argue that the Prepaid Act authorized their activities at the unlicensed locations because they are registrants under the Act, and the Act allows registrants to make arrangements with clients outside a licensed funeral home.  They urge this Court to read the Prepaid Act *in pari materia* with the Occupational Code to interpret the former as governing the sales of both prepaid and at-need contracts and merchandise.  "Under the doctrine of *in pari materia*, statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law."  *Pueblo v Haas*, 511 Mich 345, 357; 999 NW2d 433 (2023) (quotation marks, citation, and brackets omitted).  "[T]he *in pari materia* doctrine is a rule of statutory construction that is not implicated," however, if the statutory language is unambiguous.  *City of Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 460; 965 NW2d 232 (2020).  "In such circumstances, judicial construction is prohibited, and this Court must enforce the statute as written."  *Id*.

As previously discussed, the language of the MSA is unambiguous.  Likewise, the language of the Prepaid Act is unambiguous.  The Prepaid Act refers to funeral contracts on an at-need basis in just one section, MCL 328.225, which relates to pricing, commissions, and actual costs, among other things.  Subsection (1) of that provision states, in relevant part:

> All prices or quotations of prices contained in a prepaid contract, offer, or solicitation shall be stated in compliance with applicable federal and state laws and regulations.  In addition, a person who offers either merchandise or funeral or cemetery services on a preneed *or at-need basis* shall comply with the price disclosure rules of the federal trade commission, code of federal regulations, 16 C.F.R., part 453, whether or not the rules by their own terms apply to the offering. . . .  [MCL 328.255(1) (emphasis added).]

-10-

The remainder of MCL 328.225 references only prepaid contracts, and, notably, the act is titled the *Prepaid* Funeral and Cemetery Sales Act.

The definitions of "contract buyer" and "contract seller" in the Prepaid Act reference prepaid contracts and not at-need contracts. See MCL 328.213(l) and (m). Moreover, the definition of a "prepaid contract" in the Prepaid Act expressly states that it does not include at-need contracts:

> "Prepaid contract" means a contract requiring payment *in advance* for funeral or cemetery services or merchandise, physical delivery and retention of which would occur after death under a guaranteed price contract or a nonguaranteed price contract. *Prepaid contracts do not include a contract for the sale of merchandise or funeral or cemetery services entered into after the death of the contract beneficiary.* [MCL 328.215(d) (emphasis added).]

Further, the Prepaid Act requires persons who wish to sell or provide funeral or cemetery merchandise and services to register with LARA, MCL 328.216(1), and, in addition, requires a provider of merchandise or services under a prepaid contract to be licensed under the MSA or the Cemetery Regulation Act, MCL 456.521 to MCL 456.543, at the time the contract is entered into, MCL 328.221(2). Finally, the Prepaid Act expressly prohibits a seller or provider from offering or performing services where a mortuary-science license is required:

> This act does not authorize a contract seller or provider to perform or offer to perform services for which a mortuary science license or funeral establishment license[] is required by article 18 of the occupational code, 1980 PA 299, MCL 339.1801 to 339.1812, unless that person holds the required license or licenses . . . . [MCL 328.225(5).]

Accordingly, unlicensed providers may not perform or offer to perform services for which a license is required under the Occupational Code. Respondents' reliance on the Prepaid Act is therefore unavailing.[10]

## C. *ANSELL*

Respondents also argue that the decisions of the lower tribunals contravened *Ansell v Dep't of Commerce, Bd of Examiners of Mortuary Science*, 222 Mich App 347, 349; 564 NW2d 519 (1997), which they assert supports their claim that the nonscientific activities at the unlicensed locations did not require licensure under the MSA. Respondents' argument lacks merit and is based on a faulty interpretation of *Ansell*.

---

[10] Also unavailing is respondents' reliance on the Federal Trade Commission (FTC) Funeral Rule, 16 CFR § 453.1 *et seq*. Respondents have not cited any Michigan authority adopting or applying the FTC Funeral Rule in the circumstances presented. Issues unsupported by legal authority are deemed abandoned on appeal. *Patel v FisherBroyles, LLP*, 344 Mich App 264, 280 n 6; 1 NW3d 308 (2022).

As in this case, *Ansell* involved violations of the MSA. Harold S. Ansell, Jr. ("Harold"), attained a mortuary-science license after passing the requisite examinations and purportedly undertaking the statutory resident training, which required candidates to either embalm, or assist a licensed mortician in supervising the preparation of, 25 human bodies for burial or transport. Harold submitted an embalming report for each corpse, and attested he personally performed the embalming. His father or another embalmer signed the reports as Harold's sponsors. An investigation later disclosed that Harold did not participate in embalming several of the 25 bodies. The Department of Licensing and Regulation (MDLR), a predecessor of LARA, charged Harold with violating the MSA. *Ansell*, 222 Mich App at 350-351.

At a contested hearing before an administrative law examiner, Harold admitted he did not participate in embalming at least 17 of the 25 bodies in his embalming reports, but argued he should be credited for assisting in the preparation of the bodies given his efforts to procure clergy, arrange flowers, usher mourners, prepare obituaries, and sell funeral merchandise. He also cosmetically modified embalmed corpses and positioned bodies in caskets. Licensed morticians testified that "preparation for burial," a term of art, was used by mortuary scientists synonymously with "act of embalming." Accordingly, "preparation for burial" meant services performed on dead bodies such that Harold's tasks related to funeral ceremonies would not suffice. Testimony also established that the Board historically mandated 25 embalmings for resident training, and the Board rejected license applications if the applicant did not participate in any embalmings. *Id*. at 351-352.

The administrative law examiner construed the resident-training requirement set forth in MCL 339.1808(3) of the MSA to require resident trainees to personally embalm, or assist in embalming, 25 bodies, and opined that Harold misled the MDLR by submitting embalming reports on bodies he did not assist in embalming. The Board revoked Harold's license to practice mortuary science. The issue before this Court was whether § 1808(3) required prospective mortuary scientists to embalm, or participate in embalming, 25 human bodies. This Court noted that the MSA prohibited unlicensed individuals from funeral directing, embalming, or otherwise preparing human corpses for burial and transportation. Further, the resident-training provision stated, in relevant part, that the trainee must:

> "[P]resent, in connection with the other evidence required by this article, a statement from each holder of a license to practice mortuary science under whom the trainee has trained, showing that the trainee has embalmed for burial or shipment at least 25 dead human bodies, or has assisted the holder of a license for the practice of mortuary science in supervising the preparation of 25 dead human bodies for burial or transportation during the period of resident training. A resident trainee shall meet other training or requirements as may be required by rules of the department and the board." [*Ansell*, 222 Mich App at 356 (quoting MCL 339.1808(3)).]

Harold argued that resident trainees could satisfy § 1808(3) without participating in any embalmings in part because the MSA defined the "practice of mortuary science" as encompassing either "embalming" or "funeral directing." He contended morticians could satisfy § 1808(3) by performing tasks related to funerals, such as ushering funeral guests, preparing obituaries, and positioning and grooming embalmed bodies, essentially arguing his tasks fell within funeral

directing. This Court rejected his argument, stating that reading the MSA's training and definition sections *in pari materia* revealed the legislative focus on the safe, sanitary treatment of human remains, not tasks related to burial. *Id.* at 356-357. The Court further reasoned:

> [T]he [MSA] focuses on "what is to be done or not done with a dead human body." The act is replete with references to embalming and chemically treating human corpses and devoid of stipulations concerning ceremonial memorial proceedings. Therefore, we conclude that the Legislature enacted the [MSA] to regulate the science of treating human remains. In this context, the language in § 1808(3) regarding "the preparation of . . . dead human bodies for burial" is properly construed as pertaining to the scientific process by which human bodies are embalmed and treated for safe disposal, not the unscientific tasks involved in administering funeral services. In other words, to remain consistent with the treatment-oriented character of the [MSA], we construe the term "preparation" in § 1808(3) as synonymous with the word "treat" in the standard definition of "embalm," which is "to *treat* (a dead body) so as to preserve it, as with chemicals, drugs, or balsams." Random House Webster's College Dictionary, Revised Edition (1991) (emphasis added in original). [*Ansell*, 222 Mich App at 357.]

Accordingly, this Court determined that resident training must include embalming because the Legislature's goal of protecting public health would not be met by granting embalming authority to licensees who did not have embalming experience and instead performed ancillary services unrelated to the treatment of dead bodies. This Court stated that, although the MSA defines the practice of mortuary science as involving "the practice of embalming, or the practice of funeral directing, or both," funeral directing alone would not suffice. It reasoned that embalming experience was necessary because it was impossible to obtain a license exclusive to funeral directing and because embalming experience was required to prevent funeral directors from supervising burials of improperly embalmed bodies. *Id.* at 358.

Because *Ansell* focused on the embalming component of mortuary science licensure, respondents' reliance on *Ansell* is misplaced. Moreover, although the *Ansell* Court indicated that the focus of the MSA was on the scientific treatment of dead human bodies, the Court acknowledged that the definition of the practice of mortuary science in the MSA includes "the practice of embalming, or the practice of funeral directing, or both." The definition does not limit itself to the practice of embalming, as respondents argue. Further, we note that some of the MSA's provisions do not relate to the *science* of treating human remains, and continuing-education courses required under the MSA include courses involving nonscientific matters. See MCL 339.339.1806b(2)(a)(*i*)-(*viii*). If the MSA was confined to the science of processing dead bodies, as respondents argue, the courses would not include matters outside the realm of science. Because the statutory definition of "the practice of mortuary science" includes funeral directing, and the MSA clearly includes nonscientific acts, *Ansell* is inapposite, and respondents' reliance on *Ansell* is misplaced.

## D. SIGNAGE AND ADVERTISING

Respondents also contend ALJ Marmon erroneously determined their signage and website implied that they engaged in the practice of funeral directing at the unlicensed locations, and the

circuit court erroneously upheld that determination. We disagree and conclude that competent, material, and substantial evidence supported ALJ Marmon's determination, and the circuit court did not clearly err by affirming it.

At the time relevant to these appeals, Rule 41, relating to advertising, provided in part:

> A funeral establishment shall not do business in a location which is not licensed as a funeral establishment and shall not advertise a service as available from an unlicensed location.

In the parties' stipulated facts, respondents acknowledged that they advertised cremations at the Taylor location. Further, the signs at the Shelby Township and Ann Arbor locations stated, "Generations Funeral & Cremation Services," and respondents admitted that at those locations they arranged and sold cremations, memorial and burial services, and funeral and cemetery merchandise on an at-need basis. GFCS's website also advertised respondent's three unlicensed locations in addition to their licensed Farmington Hills location.

Respondents' signs and website clearly implied that persons at the unlicensed locations engaged in funeral-directing services.[11] The signs and website could also be viewed as indicating that GFCS engaged in the practice of mortuary science at those locations, in violation of MCL 339.1806(3). GFCS advertised itself as providing funeral and cremation services, i.e., mortuary-science activities, at unlicensed locations. Further, as the Bureau and MFDA assert, the MSA provides that holding oneself out as a funeral director is considered the practice of funeral directing, and Rule 41(2) prohibits doing so at an unlicensed location. Because ALJ Marmon's determination regarding respondents' signage and advertising was supported by competent, material, and substantial evidence, the circuit court did not clearly err by affirming it, and respondents' argument lacks merit.

## E. EXCLUSION OF EVIDENCE

Next, Buchanan argues that ALJ Marmon erred by excluding from evidence Buchanan's affidavit and attorney Bucchi's letter. The record shows that respondents waived their right to present the evidence because they waived their right to a contested hearing at which they could have presented evidence and instead agreed to resolve the matter on the basis of stipulated facts. "A waiver is a voluntary and intentional abandonment of a known right." *LeFever v Matthews*, 336 Mich App 651, 670 n 3; 971 NW2d 672 (2021). In light of the parties' stipulation, ALJ Marmon canceled the hearing scheduled for November 29, 2022. Thereafter, ALJ Marmon refused to admit Buchanan's affidavit[12] and Bucchi's letter, which were attached to respondents' brief. ALJ Marmon determined that admission of the affidavit would have constituted an improper

---

[11] As previously stated, the definition of "funeral directing" includes "representing oneself as engaging in the supervising of the burial and disposal of a dead human body," or "using, in connection with the user's . . . funeral establishment . . . [a] title . . . otherwise implying that the individual is engaged as a funeral director." MCL 339.1801(e).

[12] Notably, Buchanan's affidavit was dated after the parties submitted their stipulated facts.

expansion of the record beyond what the parties had agreed to in their stipulation of facts, and that it was hearsay and contained hearsay within hearsay. Regarding the letter, ALJ Marmon determined that it discussed settlement negotiations, which were inadmissible under MRE 408.

Stipulated facts submitted to a governmental agency generally should be taken as conclusive. *Signature Villas, LLC v Ann Arbor*, 269 Mich App 694, 706; 714 NW2d 392 (2006). However, a tribunal has the discretion to permit additional proofs, provided the supplement does not contradict the stipulated facts. *Id.* Nothing indicates that ALJ Marmon abused his discretion by refusing to admit respondents' additional proffered evidence. Buchanan contends ALJ Marmon should have considered his affidavit because it indicated how long the unlicensed offices had been in operation and the absence of public complaint about them. Those matters, however, are not relevant to whether respondents operated the offices contrary to the applicable statutes and regulations.

ALJ Marmon also properly determined that the affidavit contained hearsay within hearsay. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Generally, hearsay is not admissible, unless it falls within a recognized exception. MRE 802. A statement is not hearsay if it is offered for a purpose other than to prove the truth of the matter asserted. *Airgas Specialty Prods v Mich Occupational Safety & Health Admin*, 338 Mich App 482, 515; 980 NW2d 530 (2021). Hearsay within hearsay is admissible where "each part of the combined statements conforms with an exception to the rule." MRE 805. The proponent must establish a foundation to demonstrate each hearsay statement falls within an exception to the general rule precluding admission. *Kuebler v Kuebler*, 346 Mich App 633, 662; 13 NW3d 339 (2023).

In his affidavit, Buchanan stated that he had worked as a funeral director at GFCS since 1999. He consulted with LARA before opening the unlicensed locations, and a LARA representative advised that the unlicensed locations would comply with legal requirements provided respondents did not advertise that embalming, viewings, or cremations occurred at those locations. Respondents ostensibly relied on the affidavit for the truth of the matter asserted—to show Buchanan sought and received approval for the unlicensed locations. Where Buchanan has failed to show the affidavit falls within an exception to the hearsay rule, he has not established that ALJ Marmon abused his discretion by excluding the affidavit. See *Kuebler*, 346 Mich App at 662.

Buchanan also contends that ALJ Marmon erred by refusing to consider Bucchi's letter, indicating that Buchanan offered to remove the signs for the unlicensed facilities to prevent client confusion and to clarify that mortuary science did not occur at the unlicensed facilities. Bucchi also stated in his letter that a court may need to formally determine whether respondents' actions in the unlicensed facilities required licensure if the parties could not reach a compromise. Buchanan asserts that the letter was not an expansion of the record because it was filed with respondents' answer to the formal complaint, but ALJ Marmon did not exclude the letter on that basis. Rather, he rejected it because it was inadmissible under MRE 408, which governs offers to compromise. At the time ALJ Marmon decided the matter, MRE 408 provided:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either

validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. [MRE 408.]

The rule aims to encourage a compromise between parties. *Chouman v Home Owners Ins Co*, 293 Mich App 434, 437; 810 NW2d 88 (2011).

Considering the content of Bucchi's letter and MRE 408, ALJ Marmon did not abuse his discretion by excluding the letter, particularly when the parties submitted stipulated facts. Further, even if ALJ Marmon erred by excluding the letter, Buchanan has not established prejudice or demonstrated that the error was anything but harmless. See *Alpha Capital Mgmt, Inc v Rentenbach*, 287 Mich App 589, 623; 792 NW2d 344 (2010) (applying a harmless-error analysis to an alleged violation of MRE 408).

Finally, Buchanan asserts that the circuit court erred by refusing to consider GFCS's Prepaid Act registration on the basis that doing so would amount to an improper expansion of the record. Buchanan has failed to establish that the circuit court erred. Direct review of an administrative decision involves determining whether the decision was "supported by competent, material and substantial evidence on the whole record." Const 1963, art VI, § 28. It is axiomatic, therefore, that review should be limited to the record that was before the administrative tribunal.[13]

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney
/s/ Mariam S. Bazzi

---

[13] We decline to consider GFCS's argument that the lower tribunals' interpretation of the MSA renders the act an unconstitutional infringement on protected commercial speech. Respondents did not raise a constitutional challenge before ALJ Marmon, and GFCS raised the argument only in passing in a footnote in the circuit court, which did not address the issue. An argument raised in a perfunctory statement in a footnote is not preserved for our review, *Petersen Fin, LLC v City of Kentwood*, 337 Mich App 460, 474 n 2; 976 NW2d 691 (2021), and we are not obligated to consider unpreserved issues, *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023).